## In re JOHN LIDDLE CUT STONE CO.

(District Court, S. D. New York. July 13, 1916.)

1. CHATTEL MORTGAGES ⟨⟩124—PROPERTY COVERED—AFTER-ACQUIRED PROPERTY.

A mortgage upon real estate upon which a stonecutting plant was located, and the buildings and improvements, together with the machinery and other personal property used in such business, did not embrace machinery installed after the mortgage was executed, except so far as such machinery had become part of the realty.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 208, 209.]

2. MORTGAGES ⟨⟩133—PROPERTY COVERED—FIXTURES.

That such mortgage by its terms embraced machinery "and other personal property" did not limit it as a mortgage of real estate to the land and buildings.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 260, 264, 265.]

3. FIXTURES ⟨⟩18(5)—RIGHTS OF MORTGAGEES—MACHINERY.

In a stonecutting plant there was installed a traveling crane of steel construction with concrete foundations, a circular saw weighing about 16 tons, and a planing machine weighing about 20 tons. The track of the crane was upon heavy steel girders resting on steel pillars, the bases of which were sunk in concrete and anchored therein by bolts. The saw consisted of two tracks set in a concrete foundation, two tables mounted on wheels on the tracks, an overhead track and carriage, and a motor attached to the carriage; the ends of the carriage being fastened to concrete pillars, and the anchor bolts buried in such pillars. The base of the planing machine was imbedded in concrete and secured by anchor bolts. To a large extent they could not be removed without injuring the buildings and could not be removed to any extent without disintegration of the plant as a complete whole. *Held* that, as between a mortgagor and mortgagee, they constituted a part of the realty.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 38–41.]

4. FIXTURES ⟨⟩18(5)—RIGHTS OF MORTGAGEES—MACHINERY.

Though cross-girders supporting the hoisting machinery and hoisting machinery which traveled along such cross-girders, the tables used in connection with the saw, and the belting of some of the planing machinery, were not physically annexed and could be removed, they were parts of an entire structure constituting one co-ordinated piece of machinery, and were parts of the machinery, and hence parts of the land itself.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 38–41.]

In Bankruptcy. In the matter of the John Liddle Cut Stone Company, alleged bankrupt. On application for leave to foreclose a mortgage and for leave to make the receiver in bankruptcy a party. Motion granted.

Everett, Clarke & Benedict, of New York City, for petitioners.

George H. Gilman, of New York City, for receiver.

AUGUSTUS N. HAND, District Judge. This is an application by certain trustees under a will for leave to foreclose a mortgage which they hold upon premises belonging to the alleged bankrupt known as Nos. 402–422 East 107th street, in the borough of Manhattan, New

York City, and for leave to make the receiver in bankruptcy a party. The mortgage was executed by the alleged bankrupt in 1909, was duly recorded pursuant to the laws of New York, and contained a clause mortgaging, not only these premises, but also specifically the buildings and improvements thereon, together with the machinery, implements, engines, boilers, saws, and other personal property used in the cut stone business of the John Liddle Cut Stone Company thereon. After the making of the mortgage, that company installed upon the premises the following machinery: (1) A traveling crane of steel construction with concrete foundations. The track was upon heavy steel girders resting on steel truss pillars, the bases of which were sunk in concrete and anchored in the concrete by bolts running down a distance of 2½ feet below the sunken base of the pillars. (2) A Fuller patent diamond circular saw weighing about 16 tons, consisting of two tracks set in a concrete foundation, two tables mounted on wheels on the tracks, and an overhead track and carriage for the saw and a motor attached to the overhead carriage. The foundation was 8 feet deep, and the concrete pillars in which the two ends of the overhead carriage are fastened ran a few feet deeper. The anchor bolts for the machine were buried in concrete pillars and were 5 feet long, terminating in anchor bolts. (3) A planing machine fastened in concrete foundations about 8 or 9 feet deep, the base of the machine being embedded in the concrete and further secured in the concrete by anchor bolts running down into the foundation. This machine weighed about 20 tons.

It is evident from the foregoing statement, as to which all parties agree, that the machinery is embedded in or annexed to the ground much more substantially than many buildings, and the photographs submitted show that the removal of the pillars and tracks of the traveling crane would materially injure several of the frame buildings on the mortgaged premises, since these structures have been built around the steel pillars of the crane and lie beneath the track supported by the pillars. It may be doubted, however, whether the injury to the buildings caused by a removal of the steel pillars and tracks would be alone sufficient to determine the character of this structure and constitute it a fixture.

It is unnecessary to discuss at length what would have been the situation if this machinery had been installed by a tenant, or if the mortgagor and mortgagees had agreed that it should remain and be considered personalty after it was affixed. In the first case, the liberal treatment of the courts toward tenants who seek to remove additions to real property which they have installed for the conduct of their business would probably permit removal during the term. In the second case, I should probably find no sufficient reason for not holding the mortgagees to their agreement, and, as a result, the mortgage would not in such case cover the machinery added to the premises after the execution of the instrument, and it would consequently be general assets of the bankrupt estate which the receiver would be entitled to hold free from any lien.

[1] Under existing circumstances, however, I see no reason to suppose that the clause in the mortgage specifying machinery used in the

business of the mortgagor covered future acquired machinery. It specifically covered then existing machinery only, and can embrace the machinery which has been installed since the mortgage was executed only so far as such machinery has become part of the realty.

A portion of the machinery in question was, I think, so permanently affixed to the realty that it is by the weight of authority part of the land and is covered by the mortgage for that reason. The remaining articles were adapted for a stonecutting plant, were intended to be permanently used as a part of that plant, and were so annexed to or appurtenant to the land as to become fixtures within the authorities. Triumph Electric Co. v. Patterson, 211 Fed. 244, 127 C. C. A. 612; McRea v. Central National Bank, 66 N. Y. 489; Watts Campbell v. Yuengling, 125 N. Y. 1, 25 N. E. 1060; In re Welch (D. C.) 108 Fed. 367; Insurance Co. v. Allison, 107 Fed. 179, 46 C. C. A. 229.

[2] The fact that the mortgage in its terms embraced machinery "and other personal property" does not limit it as a mortgage of real estate to the land and buildings. The mortgage in no way attempted to define what constituted fixtures. It covered chattels used in the stonecutting business and ex abundanti cautela mentioned machinery, engines, boilers, and saws, leaving it to the law to determine their status. In McRea v. Central National Bank of Troy, supra, even a bill of sale covering the fixtures was regarded as unimportant in determining whether they were real or personal property.

In the case of Insurance Co. v. Allison, supra, Judge Wallace stated the law of New York, which is the law to be applied here, as follows:

"The general rule derived from the decisions of the courts of New York is that, unless the annexation is one of a permanent character, so that the machine or other chattel cannot be removed without substantial injury to the freehold, or unless the annexation is of a machine or chattel especially adapted for use in the particular place where it has been put, the purpose of the annexation and the intention with which it has been made are the most important considerations, and are the determining criterion, whether it is a fixture or a chattel."

[3, 4] It is evident, I think, that the three pieces of machinery in question were in general designed by the mortgagor for use in a large stonecutting plant, were architecturally and mechanically necessary for such a plant, and, to a large extent at least, could not be removed without injuring the various buildings. They could not be removed to any extent without disintegration of the plant as a complete whole.

The principal question which presents difficulty relates to the cross-girders supporting the hoisting machinery which are mounted on wheels that travel along the top of the longitudinal girders and the hoisting machinery which travels laterally along the top of the two cross-girders. This structure, though manifestly of great weight, could be lifted off the tracks upon which it runs, and is therefore not in a literal sense physically annexed. The same thing is true of the tables running upon the tracks used in connection with the diamond saw, and these, moreover, do not appear to be of unusual weight. The belting of some of the planing machinery could likewise be removed.

A careful discussion of the general principles laid down by the New York courts, in determining between vendor and vendee and mortga-

gor and mortgagee what are to be regarded as fixtures, may be found in the case of McRea v. Central National Bank of Troy, 66 N. Y. 489. The court there said that:

To create a "fixture" there must be "the union of three requisites: First, actual annexation to the realty or something appurtenant thereto. Second, application to the use or purpose to which this part of the realty with which it is connected is appropriated. Third, the intention of the party making the annexation to make a permanent annexation to the freehold."

And Judge Rapallo later in the same opinion said:

"The purpose of the annexation, and the intent with which it was made, is in such cases the most important consideration. The permanency of the attachment does not depend so much upon the degree of physical force with which the thing is attached, as upon the motive and intention of the party in attaching it."

Now, it seems to me that all the portions of the machinery to which I have referred are appurtenant to the land, are particularly applicable to the use of the premises as a stonecutting establishment, and were intended for a permanent accession to the freehold which was designed to be used for a stonecutting business. It may be said that they were not either sunk in the ground or affixed by rivets or bolts. But this kind of annexation cannot be regarded as a final test. The court said, in the case of Hart v. Sheldon, 34 Hun, 38, quoting from the case of Snedeker v. Warring, 12 N. Y. 170:

"A thing may be as firmly affixed to the land by gravitation as by clamps or cement. Its character may depend much upon the object of its erection. Its destination, the intention of the person making the erection often exercises a controlling influence."

And Judge Parker said in the case of Snedeker v. Warring, 12 N. Y. 170, where a statue of Washington and a sun dial, neither of which was fastened to any foundation or sunk in the ground, were under consideration:

"I apprehend the question, whether the pyramids of Egypt or Cleopatra's Needle are real or personal property, does not depend on the result of an inquiry by the antiquarian whether they were originally made to adhere to their foundations with wafers, or sealing wax or a handful of cement. It seems to me puerile to make the title to depend upon the use of such or of any other adhesive substances, when the great weight of the erection is a much stronger guaranty of permanence."

The Master of the Rolls employed the same argument in the case of D'Eyncourt v. Gregory, L. R. 3 Eq. 382, in adjudging certain carved figures and marble vases in the great hall of a country house part of the real estate. He said:

"I think it does not depend on whether any cement is used for fixing these articles or whether they rest by their own weight, but upon this, whether they are strictly and properly part of the architectural design for the hall and staircase itself, and put in there as such as distinguished from mere ornaments to be afterwards added."

The question, therefore, is whether the articles under consideration are parts of the machinery, which is in turn a part of the land itself. I think both the belting and the tables, as well as the traveling crane,

are, as counsel for the trustees have aptly put it, a portion of an entire structure constituting "one co-ordinated piece of machinery."

In the case of Sheffield, etc., Society v. Harrison, L. R. 15 Q. B. D. 358, Cotton, L. J., said in discussing whether belting used to turn machinery was a fixture:

"These belts are not merely pieces of leather, but they were essential parts of certain machines, and these machines were affixed to the freehold. These belts were fitted to the machine and were only fit to be used with it as part of it; and, if the machine was part of the land, these belts were parts of the land."

Brett, M. R., and Lindley, J., sitting in the divisional court of appeal, were of the same opinion.

The tables running upon tracks used in connection with the diamond saw in some ways resemble rolling stock of a railroad which is generally regarded as personal property, but the cars and engines in use upon our railroads are shifted from one part of the road and often from one part of the country to the other. These tables are necessary to move the stone in proper adjustment to the diamond saw and are a necessary part of the machine as a whole.

No subject is more dependent upon the circumstances of each particular case and abounds in more conflicting judicial decisions than that of fixtures. Because of the confusion of the subject, I have quoted at length from some of the decisions in order so far as possible to justify my conclusions by explicit judicial utterances.

To summarize: My opinion is that the mortgaged premises were designed for a stonecutting plant, the machinery in question was all part of this plant, and, so far as any of it is not physically annexed to the land, it is a portion of structures that are permanently annexed. All the articles in question are therefore fixtures within the principles I have referred to.

For the foregoing reasons, the motion for leave to make the receiver and his successor, the trustee, parties to a foreclosure suit, is granted.