[Civ. No. 20266. First Dist., Div. Three. Sept. 13, 1962.]

PAJARO VALLEY BANK, Plaintiff and Respondent, v. COUNTY OF SANTA CRUZ, Defendant and Appellant.

[Civ. No. 20267. First Dist., Div. Three. Sept. 13, 1962.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Plaintiff and Respondent, v. COUNTY OF SANTA CRUZ, Defendant and Appellant.

[Civ. No. 20268. First Dist., Div. Three. Sept. 13, 1962.]

MERCHANTS NATIONAL REALTY CORPORATION, Plaintiff and Respondent, v. COUNTY OF SANTA CRUZ, Defendant and Appellant.

[Civ. No. 20269. First Dist., Div. Three. Sept. 13, 1962.]

THE FARMERS AND MERCHANTS NATIONAL BANK OF SANTA CRUZ, Plaintiff and Respondent, v. COUNTY OF SANTA CRUZ, Defendant and Appellant.

(Consolidated Cases.)

William H. Card, County Counsel, John A. Waner and John S. Sandbrook, Assistant County Counsel, for Defendant and Appellant.

Stanley Mosk, Attorney General, Dan Kaufmann, Assistant Attorney General, Ernest P. Goodman and John J. Klee, Jr., Deputy Attorneys General, Harold W. Kennedy, County Counsel (Los Angeles), John D. Cahill and A. R. Early, Deputy County Counsel, as Amici Curiae on behalf of Defendant and Appellant.

Landels, Weigel & Ripley, Landels, Ripley, Gregory & Diamond, Edward D. Landels and George H. Koster for Plaintiffs and Respondents.

DEVINE, J.—Four cases have been consolidated, in three of which banks are respondents, and in the fourth, a realty-owning corporation; and in all four cases the County of Santa Cruz is appellant. Respondents are plaintiffs in actions to recover taxes paid under protest. The question is whether certain safe-deposit boxes and their metal containers are taxable real property, as fixtures, or personal property and non-taxable, as the trial court found them to be.

The facts have been agreed upon. Pajaro Valley Bank is an independent bank operating in Watsonville, California. The safe-deposit boxes upon which an ad valorem property tax was imposed were purchased by Pajaro Bank from an independent

distributor dealing in the sale of these boxes. These boxes come in containers called "nests" which range in dimension 2 feet deep by 2 feet wide and from 2 feet to 4 feet in height. They vary in weight from 200 to 1,400 pounds each, depending on the size, and each nest contains from 6 to 84 individual boxes.

The boxes are contained in the bank vault, the same vault where other valuables are kept by the bank, although the vault is divided into sections: one section for safe-deposit boxes, the other section for the bank's coin and currency, securities and records.

In the Pajaro Bank are contained 51 nests, or a total of 2,006 boxes. These metal nests are stacked in tiers along the walls of the vault, reaching very close to the ceiling. For the sake of appearance the facing of the nests is trimmed by a polished metal frame. The trim is attached to the boxes except for the trim above the boxes, and this is attached to a movable partition wall which separates the compartment for safe-deposit boxes from another compartment in the vault. There is a false ceiling, of metal, above the section where the nest of boxes are, simply for the sake of appearance.

None of the boxes or nests is attached to walls, floor, or the ceiling or false ceiling of the vault, or, for that matter, to any part of the building, by means of cement, plaster, nails, bolts or screws. They merely rest on the floor or upon each other. Although the boxes are seldom moved, they can be removed easily on a dolly. Moving causes no damage to the building or vault. Several years prior to this suit, some of the bigger boxes, which were not as popular as smaller boxes for rental purposes, were moved from the compartment housing the safe-deposit boxes into the compartment housing currency, coins and bank documents.

The vault would be needed by the bank if it did not rent out safe-deposit boxes, and there would be no difference in construction except that the vault would not have to be so large.

The Farmers and Merchants National Bank of Santa Cruz has substantially the same physical arrangement for its safe-deposit boxes, except that the tiers of nests do not rest on the floor of the vault but on 2-inch wooden frames. There is no attachment of any kind of the nests to the frames; gravity alone holds the nests in place. Recently, Farmers opened a new branch and supplied it with two nests from its main

office. Removal was accomplished by placing the nests on a dolly and rolling them out of the vault. Not the slightest structural change or unfastening was needed, and no damage whatever was done to the vault.

Bank of America National Trust and Savings Association has paid taxes for safe-deposit boxes at its Main Branch at 1134 Pacific Avenue, Santa Cruz, where the bank owns the building; and Merchants Realty Corporation, owner of the building at 1240 Soquel Avenue, Santa Cruz, has paid taxes for the boxes there.

The bank purchases its safe-deposit boxes in carload lots and stores them in a warehouse. The boxes are similar to those used by the Pajaro Bank. When Bank of America opens up a branch, a specified number of boxes are brought over from the warehouse by trucks and left at the bank. From where the boxes are dropped, they are placed on a dolly and rolled into the vault where they are arranged in rows, side by side and on top of each other. Usually the boxes are raised from the ground and rest either on a metal stand or on pieces of 2-inch by 4-inch wood.

If the bank's officials decide that the vault contains more boxes than necessary, the unneeded boxes are taken out of the vault room and returned to the warehouse or delivered to another branch.

As in the Pajaro Bank, these boxes have strips and panels of light metal or plywood painted the same color as the vault area, which are used to give the appearance of evenness. These panels are attached either to the wall or to the boxes, but in no instance are they attached to the wall and to the boxes at the same time. Nor are these boxes attached to the vault or building in any other way.

The vault rooms themselves are integral parts of the bank and are so designed when the building is contemplated. Inside the vault separate compartments, connected by doorways, are planned with the idea of using one of these compartments for safe-deposit boxes. The rest of the compartments are used for other banking purposes.

The Main Office Branch was built in 1931. Since that time, 29 nests have been added to the compartment in the vault. In June of 1956, one nest was returned to the warehouse.

The East Branch was built in 1953. At that time seven nests were moved in from the former location of the East Branch. Since that time, 13 nests have been moved in from the ware-

house. In Merchants Realty's lease to Bank of America there is an agreement that the bank may remove the boxes from the property.

It is stipulated that prior to the assessment for 1959-1960, the boxes were not classified as real property by the assessor and that no change has been made which would now demand a different classification. It is stipulated that plaintiffs exhausted their administrative remedies.

Personal property of banks is exempt from local property taxation, but their real property is subject to such taxation. (Cal. Const., art XIII, § 16.) In lieu of all licenses and taxes except on real property, banks pay a higher franchise tax than do other corporations. (Rev. & Tax. Code, §§ 23181, 23182, 23186.)

Section 660 of the Civil Code defines fixtures: "A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts or screws; except [an exception relating to crops concludes the section]."

 In order to determine whether a thing is a fixture, we must look at the manner in which it is annexed, the intention of the person who made the annexation, and its adaptability to the purpose for which the realty is used. (*San Diego T. & S. Bank* v. *County of San Diego,* 16 Cal.2d 142, 149 [105 P.2d 94, 133 A.L.R. 416] ; *City of Los Angeles* v. *Klinker,* 219 Cal. 198, 206 [25 P.2d 826, 90 A.L.R. 148].)

It having been stipulated that there is no physical attachment by bolts, cement or anything like these, of the boxes to the realty, affixation could result, under the provisions of section 660 of the Civil Code, only if the boxes are "permanently resting" on the realty, or "permanently attached to what is thus permanent." Considering first whether the boxes are "permanently resting" on the realty, we find nothing which would cause us to disturb the findings and conclusions of the trial judge. There has been some actual movement of the boxes; not extensive movement, but perhaps as much as there is of steel filing cabinets and safes in professional and commercial offices, and it seems that the addition or subtraction from the number of nests depends on the activity in renting them

rather than on physical factors, such as weight or bulk. Movement is accomplished by so light a conveyor as a dolly.

Nor do we find it necessary, based on the facts which were stipulated, to conclude that the boxes are permanently attached to what is permanent. There is not a single bolt, screw or adhesive substance binding the boxes to the vaults. The case is unlike that of *City of Los Angeles* v. *Klinker, supra,* 219 Cal. 198, wherein enormous presses of the Los Angeles Times, for which special foundations had been built, and heavy machinery, much of it bolted or grouted to floors and connected with the power, water and drainage systems, were held to be fixtures for the purpose of an eminent domain award, for there is no such massive equipment here, no bolting or grouting and no connection with service lines of the whole building. It is also quite distinguishable from *San Diego T. & S. Bank* v. *County of San Diego, supra,* 16 Cal.2d 142, in which bank vault doors, anchored into a heavy metal frame, as a unit, the frames being held to the vault by concrete wedges, were held to be fixtures. The doors could be removed only with much cost and inconvenience. They were held to be physically, as well as functionally, integrated with the vault itself.

The trim around the boxes, used to create a neat, symmetrical appearance, is not connected with the vaults, and even if it gives some showing of security and permanence, it does not, we think, thereby cause an annexation. Appellant argues that as the Supreme Court has said in *Trabue Pittman Corp.* v. *County of Los Angeles,* 29 Cal.2d 385, 393 [175 P.2d 512], ''for the most part assessors must be allowed to act on the basis of outward appearances,'' the semblance of permanency given by the whole arrangement of the boxes justifies the assessor's action. In the *Trabue* case, however, the things assessed (besides the vault door, which was held a fixture under the *San Diego T. & S. Bank* case, *supra*) were tellers' cages, partitions and counters which admittedly were fixtures, but were claimed by the bank to be trade fixtures, removable without damage to the realty, and removable under the lease of the building. The court held that there was no distinction between that class of fixtures known as trade fixtures and other things annexed to the property with a sufficient degree of permanence.

In saying that assessors must act, for the most part, on appearances, then, we believe the meaning is that

assessors dealing with trade fixtures, concededly affixed to a building, are not bound by the fact that, as between themselves, the landlord and tenant may have agreed that such trade fixtures may be removed, nor by the fact that the affixed things may be removed without damage, and it may be that the rule of appearances has other applications; but we believe it is not meant that things not affixed may be deemed fixtures merely because an aspect of solidity is presented to the bank's customers, when the fact that there is no affixation is readily ascertainable by the assessor.

We turn to the subject of the claim that there is a functional unity of the boxes to the purpose for which the realty, and in particular the vault, is used, and that constructive annexation results.

 Portions of equipment not attached to the realty but which are used with and essential to other portions attached to the realty constitute a unit and are constructively annexed (*Southern Cal. Tel. Co.* v. *State Board of Equalization,* 12 Cal.2d 127, 138 [82 P.2d 422]; *United Pacific Ins. Co.* v. *Cann,* 129 Cal.App.2d 272, 275 [76 P.2d 858].) In the *Southern California Telephone* case, the only equipment which was not affixed in one way or another to the building, namely, head sets, breast sets, operators' stools, and heavy charging and ringing machines, was specially designed for use in connection with the attached portions of the equipment, and most of it was not usable except with telephone equipment. In the *United Pacific Insurance* case (not a taxation case), the articles were either actually or constructively affixed in this way: A shipbuilding operation had two ways, attached to the ground by pilings, and on the ways were tracks held by spikes. A cradle ran along the tracks; it was attached to a winch by a cable and the winch was bolted to a concrete block. Both cradle and winch were essential to the ways, which could not be used without them.

In *San Diego T. & S. Bank* v. *County of San Diego, supra,* the vault door was held to be a fixture partly because it was physically integrated and partly because it was functionally integrated with the building, but as to the latter element, the court made note of the obvious facts that a vault is essential to a bank and a door is essential to a vault.

It is to be observed that nonaffixed articles have been held to be constructively annexed only where they are essential to the purposes of predominant fixtures. In our case,

the boxes were not essential to the operation of the vault, which would have to be maintained for the bank's functions and existence. On the other hand, safe-deposit boxes are not essential to general banking functions, nor are they unique to banks. They are to be found in hotels, clubs, airports and other buildings. To the banks, the boxes are, presumably, profitable; but so, too, presumably, are computers, adding machines, filing cabinets, even though unit profits of the latter may not be so readily measurable, and these units, too, must be safely housed. We do not deem the boxes essential to the operation of the vault or the building, and we do not deem them to be fixtures.

The judgments are affirmed.

Draper, P. J., and Salsman, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 7, 1962.