[Civ. No. 39411. First Dist., Div. Two. July 24, 1978.]

SEATRAIN TERMINALS OF CALIFORNIA, INC.,
Plaintiff and Appellant, v.
COUNTY OF ALAMEDA et al., Defendants and Respondents.

## COUNSEL

Lillick McHose & Charles, William F. Broll, Michael G. Desmarais and Gary P. Encinas for Plaintiff and Appellant.

McCutchen, Doyle, Brown & Enersen, Gordon M. Weber and Justin Hughes as Amici Curiae on behalf of Plaintiff and Appellant.

Richard J. Moore, County Counsel, and James F. May, Deputy County Counsel, for Defendants and Respondents.

## OPINION

KANE, J.—The appeal at bench concerns the recovery of real property taxes for the 1973-1974 assessment year levied upon a possessory interest

in two large cargo cranes owned by respondent City of Oakland (hereafter Port or respondent) and leased to and operated by Seatrain Terminals of California, Inc. (hereafter Seatrain or appellant). The background facts may be summarized as follows:

In 1969, appellant constructed a marine terminal facility on 29 acres of land located at 1395 Middle Harbor Road, Oakland, California. The southern boundary of the facility borders on the Oakland Estuary for some 1,100 feet. The facility consists of a paved area for cargo containers and chassis, a wharf area in which crane rails are embedded, a berth area, and an office inspection maintenance area. The wharf area where the cranes are operated was designed and constructed so as to be able to carry the huge weight of cargo container cranes. Thus, the area where the rails are embedded is supported by special concrete girders placed on 6-foot centers, whereas the remainder of the wharf is propped up by unbraced piles on 12-foot centers. The 2 parallel rails on the wharf run 100 feet apart.

The 2 cranes involved in the present lawsuit weigh 750 tons each, stand about 100 feet high, and operate on railbeds. They are annexed to the railbed only by their weight and the force of gravity. The cranes are self-propelled by diesel power and designed to move along the specially constructed roadbed with fixed termini to load and unload container ships. As found by both the Assessment Appeals Board of the County of Alameda (Board) and the trial court, the entire wharf facility was constructed to handle cargo containers, and the cranes are the most efficient and economical method of handling the above-described cargo operation. As the Board put it, "The area upon which the cargo container cranes operate, as well as the adjacent land upon which the rails are to be extended, is specifically designed to function as a cargo container and shipping facility. *The highest and best use of the subject premises is for cargo container operations.*" (Italics added.)

In January 1971, appellant contracted to sell the facility and the two container cranes to the Port. In return, the Port agreed to enter into a lease/preferential assignment agreement (Agreement) under which appellant obtained a lease as to a 6-acre area containing an office inspection maintenance building and a preferential assignment to the remaining 23 acres of the facility for a period not less than 25 nor more than 30 years. The Agreement, in addition, granted appellant the right to use the 2 container cranes for a period of 15 years. In consideration, appellant was

required to pay the Port sums equivalent to the Port's amortized financing costs of the acquisition of the entire facility including the cranes.

Title to the facility passed to the Port on August 1, 1971, and title to the cranes on November 1, 1971, upon which respective dates the Agreement became effective. Pursuant to the terms of the Agreement, appellant had an exclusive right to use the 23-acre area and the cranes whenever its business needs, in its sole determination, required. A secondary use by others was permitted under the Agreement only if such use did not unreasonably interfere with Seatrain's own operation (see discussion *infra*).

Finally, it is to be noted that subsequent to March 1, 1973, the lien date in question, the rails which had been built originally on the land occupied by Seatrain were extended to two contiguous terminals owned by the Port and preferentially assigned to Marine Terminals Corporation and United States Lines, respectively. As a consequence, the railbed upon which the cranes thereafter moved extended to 2,750 feet in length—1,300 feet on the land leased to Seatrain, and 1,450 feet on the area assigned to the above-mentioned two entities.

Based upon the foregoing facts, both the Board and the trial court concluded that the cranes in dispute were fixtures (hence improvements to real property), and that Seatrain had a taxable possessory interest in the cranes on the lien date. Appellant's claim for refund of taxes was therefore denied.

The principal issues on appeal are: (1) whether the cranes in question constituted real or personal property; (2) whether Seatrain's interest in the cranes was a taxable possessory interest within the meaning of the law; and (3) whether Revenue and Taxation Code,[1] section 107.4, defining nonexclusive use of harbor facilities exempted appellant from property taxes levied upon the cranes.

*Classification of Cranes as Realty*: ■ It is conceded that by virtue of the Agreement Seatrain had an undisputed possessory interest in the cranes. However, in order to be taxable the possessory interest must relate to, or exist in, real rather than personal property (*General Dynamics Corp. v. County of L. A.* (1958) 51 Cal.2d 59, 65-66 [330 P.2d 794]). Our first

---

[1]Unless otherwise indicated, all references will be made to the California Revenue and Taxation Code.

order of business, therefore, is to determine whether the cranes in question constituted real or personal property.

Pursuant to statutory definition, " 'Property' includes all matters and things, real, personal, and mixed, capable of private ownership." (§ 103.) " 'Real estate' " or " 'real property' " comprises *inter alia* the possession of, claim to, ownership of, or right to the possession of land and improvements (§ 104). Section 105 defines " 'Improvements' " as including "All buildings, structures, fixtures, and fences erected on or affixed to the land, except telephone and telegraph lines." In defining fixtures, Civil Code, section 660, provides in part that "A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts or screws." Finally, section 106 sets forth that " 'Personal property' includes all property except real estate."

Appellant argues that under the foregoing statutory provisions and the case law pertaining thereto, the cranes in dispute should have been categorized as personal property, and by classifying the cranes as fixtures the trial court committed reversible error. We disagree.

█ It is well settled that in determining whether an article constitutes a fixture, three criteria must be taken into consideration: (1) the manner of its annexation to the realty; (2) its adaptability to the use and purpose for which the realty is used; and (3) the intention with which the annexation is made (*San Diego T. & S. Bank* v. *San Diego* (1940) 16 Cal.2d 142, 149 [105 P.2d 94, 133 A.L.R. 416]; *Pajaro Valley Bank* v. *County of Santa Cruz* (1962) 207 Cal.App.2d 621, 625 [24 Cal.Rptr. 639]). █ While it has been said that in disputes between private parties (i.e., landlord and tenant, vendor and vendee, etc.), the intention of the parties is controlling in determining whether an article is a fixture and part of the realty or is personalty (*Southern Cal. Tel. Co.* v. *State Board* (1938) 12 Cal.2d 127, 134 [82 P.2d 422]), *for taxation purposes, the intention must be adjudged by the physical facts rather than the subjective intention of the parties.* As the court put it in *Simms* v. *County of Los Angeles* (1950) 35 Cal.2d 303, 309 [217 P.2d 936], "It is also settled that for tax purposes the 'intention' must be determined by the physical facts or reasonably manifested outward appearances without regard to the annexor's status as landlord or tenant." (Accord: *Specialty Restaurants*

*Corp.* v. *County of Los Angeles* (1977) 67 Cal.App.3d 924, 933 [136 Cal.Rptr. 904]).

In resolving whether an article placed on the premises constitutes a fixture or personal property, the aforelisted three elements do not play equal parts. In making the determination in a particular case the element of intent is regarded as a crucial and overriding factor, with the other two criteria being considered only as subsidiary ingredients relevant to the determination of the intent. As succinctly stated in *M. P. Moller, Inc.* v. *Wilson* (1936) 8 Cal.2d 31, 37 [63 P.2d 818], "*This court* has recognized the test of intention to make the article a permanent addition to the realty as manifested by the physical facts, and *has accepted the character of the annexation and the use for which the article is designed as subsidiary elements employed for the purpose of testing the intention of permanency.*" (Italics added.)

■    When viewed in light of the foregoing principles, the trial court's conclusion that the cranes in dispute were installed with the intention of permanency and therefore became a part of the realty, is abundantly supported by "the physical facts or reasonably manifested outward appearances," especially the manner of annexation and the use and purpose for which the wharf area in dispute was used.

In addressing the question of annexation, we initially observe that the common law test of technical affixation of the article to the realty is no longer an absolute prerequisite to "fixture" status. On the contrary, the modern trend of case law underlines that fixtures include articles such as heavy machinery whose permanent annexation is not manifested by the use of bolts, screws and the like, but which are of such weight that the mere retention in place by gravity is sufficient to give them the character of permanency and therefore affixation to the realty *(M.P. Moller, Inc.* v. *Wilson, supra,* 8 Cal.2d at p. 37). Even more importantly, however, the cases and authorities recognize that the annexation which renders the object a fixture may be not only actual, but also constructive. Thus, constructive annexation may be found where the objects, although not themselves attached to the realty, comprise a necessary, integral or working part of some other object which is attached (35 Am.Jur.2d, Fixtures, § 11, pp. 707-708; *Southern Cal. Tel. Co.* v. *State Board, supra,* 12 Cal.2d 127, 138). As stated in *United Pacific Ins. Co.* v. *Cann* (1954) 129 Cal.App.2d 272, 275 [276 P.2d 858], "It is also the rule that portions of equipment not attached to the realty but which are used with and

essential to other portions attached to the realty constitute a unit and are constructively annexed." (Accord: *Pajaro Valley Bank* v. *County of Santa Cruz, supra,* 207 Cal.App.2d at p. 627; *Specialty Restaurants Corp.* v. *County of Los Angeles, supra,* 67 Cal.App.3d at pp. 936-937.)

The case at bench clearly falls within these rules. As indicated above, the cranes in dispute are extremely heavy, weighing 750 tons each. While they are annexed to the wharf facility by weight only, the rails upon which the cranes run are embedded in the wharf and constitute an integral part of the structure. Since the cranes comprise a necessary, integral and working part of the rails which are attached to the property, and since without the cranes the rails—the attached part of the structure—would lose their significance, the cranes must be deemed to be annexed to the realty within the meaning of the constructive annexation doctrine.

The adaptability test lends further support to the trial court's holding that the cranes at issue were intended to be permanent installations rather than movable personal property. As pointed out by legal authorities, the most favored indicia of implied intention of permanence of annexation are the various circumstances surrounding the use of the property. The question most frequently asked is whether the real property is peculiarly valuable in use because of the continued presence of the annexed property thereon (*Specialty Restaurants Corp.* v. *County of Los Angeles, supra,* at p. 935; 5 Powell on Real Property (1977) § 660, pp. 96.3-96.4). Thus, it has been said that an object placed on the realty may become a fixture if it is *a necessary or at least a useful adjunct to the realty,* considering the purposes to which the latter is devoted. This principle, variously referred to as the "adaptability test" or the "integrated industrial plant doctrine" or "institution doctrine," is often given great weight in determining whether a particular object has assumed the status of a fixture (35 Am.Jur.2d, Fixtures, § 12, p. 708; see also *M. P. Moller, Inc.* v. *Wilson, supra,* 8 Cal.2d at p. 38; *Bank of America* v. *County of Los Angeles* (1964) 224 Cal.App.2d 108, 114 [36 Cal.Rptr. 413, 6 A.L.R.3d 419]).

In the case at bench, the trial court found, and the record supports the proposition, that the marine terminal facility was built specifically for handling cargo containers; that the cranes designed for the above specified purpose were an integral part of the facility; that the cranes constituted the most efficient and economic manner of handling the cargo

containers; and, finally, that both functionally and physically the cranes were an integral part of the terminal operation, and without them the terminal facility would not function in consonance with its purpose and design. Since the evidence established beyond any dispute that the cranes in question were necessary or at least useful for the operation of the terminal facility, and in fact constituted an integral part of the operation of the shipyard, the criteria of the adaptability test were fully met (*Kaiser Co. v. Reid* (1947) 30 Cal.2d 610, 630 [184 P.2d 879]; *Southern Cal. Tel. Co. v. State Board*; *M. P. Moller, Inc. v. Wilson*; *Bank of America v. County of Los Angeles*; *United Pacific Ins. Co. v. Cann*; all *supra*; *In re John Liddle Cut Stone Co.* (S.D.N.Y. 1916) 242 Fed. 691; *Abex Corporation v. Commissioner of Taxation* (1973) 295 Minn. 445 [207 N.W.2d 37]; *Cornell College v. Crain* (1931) 211 Iowa 1343 [235 N.W. 731]; *Menard v. Courchaine* (1931) 278 Mass. 7 [179 N.E. 167]; *Titus v. Poland Coal Co.* (1923) 275 Pa. 431 [119 A. 540]).

Appellant nonetheless insists that the cranes should have been classified as personal property because (a) they are not physically attached to the realty; (b) are moveable to other places or could be mounted on tires or crawlers and used in areas where the rails did not extend and therefore manifest an intent that they were not meant to become permanent improvements; (c) due to their movability the cranes are like railroad rolling stock which is regarded as personal property under the majority of jurisdictions; and (d) the integrated industrial plant doctrine and/or the theory of constructive annexation are inapplicable to the cranes because they are not essential to the use and purpose of the wharf. None of appellant's contentions have any merit.

Appellant's first objection is obviously misplaced. As pointed out earlier, an article may be affixed to the realty either physically or constructively. In the instant case, as we have pointed out, the constructive annexation doctrine is clearly applicable. The constructive annexation doctrine and the adaptability test have been held especially applicable to ponderous articles, such as heavy machinery, which are annexed to the land only by the force of gravity (35 Am.Jur.2d, Fixtures, § 102, pp. 779-780; *Abex Corporation v. Commissioner of Taxation, supra*, 207 N.W.2d 37).

Appellant's next contention that the movability of the cranes demonstrated that they were not intended to be permanent installations, is likewise ill-founded. As repeatedly emphasized in cases, permanence is to

be distinguished from perpetuity. In order to make an article a permanent accession to the realty, its annexation need not be perpetual. It is sufficient if the article appears to be intended to remain where fastened until worn out, until the purpose to which the realty is devoted has been accomplished, or until the article is superseded by another article more suitable for the purpose (*San Diego T. & S. Bank* v. *San Diego, supra*, 16 Cal.2d at p. 151; *Bank of America* v. *County of Los Angeles, supra*, 224 Cal.App.2d at p. 114; *Specialty Restaurants Corp.* v. *County of Los Angeles, supra*, 67 Cal.App.3d at p. 934). While in the case at bench appellant introduced evidence that it was *theoretically* possible to transfer the cranes by barges to another location and/or to mount them on rubber tires or crawlers and run them on areas of the wharf where the rails did not extend, the fact remains that in reality none of the suggested measures were carried out. Instead, the record bespeaks that the Agreement accorded Seatrain a long-term lease to use the cranes; and that, availing itself of its contractual rights, Seatrain did use the whole facility, including the cranes, continuously. No evidence was presented that the transfer of the cranes to another port was contemplated or was imminent, much less that any actual step was taken in that direction. In addition, it was shown that the usage of rubber tires or crawlers which would have enhanced the mobility of the cranes would have been economically unjustified. As indicated in cases, great expense involved in the removal of heavy equipment and the difficulty attending its removal are indicative of intended permanence (*Specialty Restaurants Corp.* v. *County of Los Angeles, supra*).

Appellant's attempt to draw a parallel between railroad rolling stock and the cranes operated in a limited area is also mistaken for two main reasons. One, the cases make a definite distinction between generalized and localized mobility, and equipment with the latter properties has consistently been held to constitute fixtures. For example, in *Titus* v. *Poland Coal Co., supra*, 119 A. 540, pit cars used in a coal mine which, similar to the railroad wagons, moved on embedded rails were held to be fixtures because they performed a function of a localized rather than general nature. In *United Pacific Ins. Co.* v. *Cann, supra*, 129 Cal.App.2d 272, in a comparable situation, a cradle which ran on tracks by use of a cable attached to an electrically operated winch and thus had only limited mobility was also held to be a fixture. In *In re John Liddle Cut Stone Co., supra*, 242 Fed. 691, the court likewise concluded that machinery running on rails which could be lifted off the tracks constituted a fixture. Two, state regulations in California make it explicit that "Cranes, on fixed

ways" are improvements for the purpose of property taxation (Cal. Admin. Code, tit. 18, § 124, subd. (b)). When reasonably interpreted, the phrase "fixed ways" no doubt includes the type of railbed which exists on Seatrain's preferentially assigned property and upon which the cranes in question operate (cf. *United Pacific Ins. Co.* v. *Cann, supra*; Webster's New Internat. Dict. (3d ed. 1965)).

Appellant's fourth argument that the adaptability test and the constructive annexation principle were erroneously applied because the record failed to show that the cranes were essential to the use and purpose for which the wharf was designed, is predicated on an apparent misinterpretation of law. The cases are clearcut and leave no doubt that the proper standard for the application of these doctrines is that the article be necessary or convenient to the use of the realty. As expressed in *Southern Cal. Tel. Co.* v. *State Board, supra,* 12 Cal.2d at page 136, "The fact that the articles affixed are *necessary or convenient* to the use of a building for the purpose for which it is designed is generally treated as tending to indicate they are realty" (italics added; accord: *Bank of America* v. *County of Los Angeles, supra,* 224 Cal.App.2d at p. 114; *Specialty Restaurants Corp.* v. *County of Los Angeles, supra,* 67 Cal.App.3d at p. 935). This is in full harmony with the definition stated before that an object may become a fixture if it is *a necessary or at least a useful adjunct to the realty,* considering the purposes to which the realty is devoted (35 Am.Jur.2d, Fixtures, § 12, at p. 708).

We observe in passing that the cases relied on by appellant (*City of San Joaquin* v. *State Bd. of Equalization* (1970) 9 Cal.App.3d 365 [88 Cal.Rptr. 12]; *United States Nat. Bank* v. *County of Los Angeles* (1965) 234 Cal.App.2d 195 [44 Cal.Rptr. 286]; *Pajaro Valley Bank* v. *County of Santa Cruz, supra,* 207 Cal.App.2d 621) are clearly distinguishable from the case at bench. In all those cases the articles in question were easily moveable and/or often moved. Moreover, in each of them the trial court found upon the particular circumstances of the individual case that the article challenged was personal property rather than a fixture, and the reviewing court did no more than affirm the finding of the lower court. By contrast, in the case at bench the cranes in dispute were ponderous, were not removed from the premises, and both the Board and the trial court found that they constituted fixtures. ■ It is, of course, axiomatic that whether the property has lost its character as personalty and has become a fixture is primarily a question of fact to be determined by the trier of fact whose findings must be upheld on appeal where, as here, they are

supported by sufficient evidence (*R. Barcroft & Sons Co.* v. *Cullen* (1933) 217 Cal. 708, 711 [20 P.2d 665]; *M. P. Moller, Inc.* v. *Wilson, supra,* 8 Cal.2d at p. 38; *Abex Corporation* v. *Commissioner of Taxation, supra,* 207 N.W.2d at p. 42).

*Taxability of Possessory Interest*: Appellant's second major contention is that even if the cranes constitute improvements to real property, they are not subject to ad valorem property taxation, because Seatrain's possessory interest in the cranes is not exclusive (*Kaiser Co.* v. *Reid, supra,* 30 Cal.2d 610; *Von Goerlitz* v. *Turner* (1944) 65 Cal.App.2d 425 [150 P.2d 278]). Appellant's argument is predicated upon certain provisions of the Agreement which do allow the secondary use of the premises by the Port or its designees if such use, in the sole determination of Seatrain, does not interfere with its business operations.[2]

■ Whatever had been said in *Kaiser* and the preceding cases, the issue at bench was conclusively adjudicated in *Sea-Land Service, Inc.* v. *County of Alameda* (1974) 36 Cal.App.3d 837 [112 Cal.Rptr. 113]. In *Sea-Land,* we were invited to pass upon the taxability of marine facilities where, similar to the case at bench, there was a secondary use clause in the preferential assignment agreement which authorized the port to use the marine facilities provided such use did not unreasonably interfere with the operations of Sea-Land, the assignee under the agreement.[3] In reversing the trial court's judgment and holding that, despite the secondary use clause, Sea-Land had a taxable possessory interest in the premises under section 107, we first pointed out that under *Board of Supervisors* v. *Archer* (1971) 18 Cal.App.3d 717, 727 [96 Cal.Rptr. 379], exclusive use is not destroyed by concurrent use when the extent of each

[2]The pertinent provisions of the Agreement read as follows: "Seatrain shall allow the Port or Port's designees to use all or any part of the Assigned Area and the Cranes for the berthing of vessels and loading or discharging of cargoes and operations incidental thereto, such use to include right of access to the Assigned Area over access routes available to and used by Seatrain; *provided that such Secondary Use by the Port, or its designees, shall not, in the sole determination of Seatrain, unreasonably interfere with the operations of Seatrain* as herein authorized." (Italics added.)

[3]To demonstrate the striking similarity of the two clauses, we set out the relevant provisions of the *Sea-Land* agreement, as follows: " ' "The Port reserves the right . . . to use all or any part of the areas and properties . . . for the berthing of vessels and loading or discharging of cargoes and operations incidental thereto, *provided, only,* that *such use* by the Port *shall not unreasonably interfere* with the operations of assignee as herein authorized. In the event of any such secondary use by the Port, *all . . . charges . . . shall accrue to* and *be billed by the Port.*" ' " (*Sea-Land Service, Inc.* v. *County of Alameda, supra,* at p. 840.)

party's use is limited by the other party's right to use the property at the same time. Furthermore, we underlined that when properly interpreted the use clause in question did secure exclusive possession to the lessee, by stating: "Here, Sea-Land has exclusive possession against all the world, including the owner, whenever Sea-Land has a 'business need' for the property. The port's reservation to use the area for berthing, loading and unloading when 'such use does not unreasonably interfere with the operations' of Sea-Land does not authorize the port to use the premises when Sea-Land has a 'business need' therefor. Sea-Land not only had actual possession of the premises but it continuously used and had a business need to use all of the premises. Thus, *Sea-Land had a right to exclusive possession against all, including the port, whenever Sea-Land had a business need for it; only in the absence of Sea-Land's 'business need' can the port temporarily assign the premises to other persons.*" (*Sea-Land Service, Inc.* v. *County of Alameda, supra,* at p. 842, italics added.) The very same reasoning applies with equal (if not added) force here where it is provided not only that the secondary use may not unreasonably interfere with Seatrain's primary use, but also that the reasonableness of the secondary use is to be determined by Seatrain alone.

*Applicability of Section 107.4*: In the alternative appellant argues that regardless of the holding of the case law the exclusivity of possession test was reinstated by the enactment of section 107.4, and that pursuant to the provisions of that section appellant was clearly exempt from property taxes levied upon the usage of the cranes.[4]

■ Although due to the secondary use clause of the Agreement, the case at bench would clearly fall within the purview of section 107.4,

[4]Section 107.4, enacted in 1970 and amended in 1971, provides that "For purposes of Section 107, *'possessory interest' shall not include the possession of,* claim to, or right to the possession of *any* berth, wharf, dock, pier, or similar *harbor facility owned by a city,* city and county, county, or harbor or port district, *if such possession,* claim, or right *is granted for nonexclusive use* of such berth, wharf, dock, pier, or similar harbor facility. Any *nonexclusive possession,* claim, or right described in this section *shall not be subject to property taxation.* [¶] If the possession of, claim to, or right to the possession of, any such berth, wharf, dock, pier, or similar harbor facility is, in fact, exclusive, it shall be subject to property taxation, regardless of the manner in which such possession, claim, or right is created. [¶] As used in this section, a *'nonexclusive possession,* claim, or right' *means a right to the use of a specific berth, wharf, dock, pier, or similar harbor facility, when such specific facility is also used intermittently by others, even though such possession, claim, or right to use such facility is paramount to any use by others.* [¶] As used in this section, a *'nonexclusive possession,* claim, or right' *includes a right to the use of a specific berth, wharf, dock, pier, or similar harbor facility, when the owner reserves the right to assign to others the right to use such facility.*" (Italics added.)

appellant nevertheless cannot prevail for the simple reason that section 107.4 has been held unconstitutional in *Lucas* v. *County of Monterey* (1977) 65 Cal.App.3d 947 [135 Cal.Rptr. 707] (hg. den.). As the court succinctly stated, "The effect of this legislation [§ 107.4] is to reclassify berths, wharfs, etc., containing the noted characteristics, so that they are no longer considered property and are therefore exempt from taxation. Such an effect goes counter to the mandate of the Constitution, article XIII, section 1, that all property, not specifically excluded in the Constitution, shall be taxed." (P. 954.)

Appellant's subsidiary argument that the trial court committed prejudicial error in ruling on certain evidentiary matters (exclusion of motion picture of the cranes, limiting the cross-examination of witnesses) deserves just passing attention. A review of the record as a whole convinces us that the rulings complained of were entirely proper, and at any rate they did not contribute to the outcome of the case in any considerable way.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied August 23, 1978, and appellant's petition for a hearing by the Supreme Court was denied September 20, 1978.