### In re MERRICK, Dorothy, Debtor.

### Bankruptcy No. 92–02845–13.

United States Bankruptcy Court,
D. Idaho.

Feb. 4, 1993.

Louis Garbrecht, Coeur d'Alene, ID, for debtor.

William Appleton, Coeur d'Alene, ID, for Northern State Bank.

### MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

Dorothy Merrick, the debtor in this chapter 13 case ("debtor"), has filed an objection to the claim filed by Northern State Bank ("Bank"). The debtor has also moved to avoid the lien asserted by the Bank against the debtor's satellite dish. The Bank contests the objection and motion.

The debtor contends the satellite dish is a fixture. She presented testimony and photos showing the satellite dish installed on top of a metal pole. This pole is sunk in concrete in the ground, and attached to the eaves of the debtor's house by a metal

bracket and bolt. Holes were drilled through several walls for the cables to connect to the debtor's television set. The debtor contends the Bank's failure to record its lien in the satellite dish as a fixture renders the lien avoidable.

The Bank contends the satellite dish is personal property, and its lien is therefore valid and perfected. The Bank presented testimony by Dennis Decker, the president of the company that sold and installed the debtor's satellite dish. He indicated his company routinely removed satellite dishes from property in such situations as where the owner was moving or the satellite dish was being repossessed. The satellite dish would itself be removed, and the pole supporting it would generally be cut off at ground level. The cables running to the television would be removed if the debtor so requested, and the holes filled. The concrete support would be left in the ground. Mr. Decker also indicated one of the selling points for his satellite dishes was that they could be removed from the property. The debtor stipulated that the Bank's lien, if it existed, was a purchase money security interest in consumer goods.

The Supreme Court of Idaho has stated a three part test is used to determine whether a piece of property has become a fixture:

> "(1) annexation to the realty, either actual or constructive; (2) adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and (3) intention to make the article a permanent accession to the freehold."

*Rayl v. Shull Enterprises, Inc.*, 108 Idaho 524, 700 P.2d 567, 570 (Idaho 1984) (quoting *Pearson v. Harper*, 87 Idaho 245, 256, 392 P.2d 687, 693 (Idaho 1964)).

■ Annexation may be both actual or constructive. " '[C]onstructive annexation may be found where the objects, although not themselves attached to the realty, comprise a necessary, integral or working part of some other object which is attached.' " *Rayl, supra,* 700 P.2d at 571 (quoting *Seatrain Terminals of California v. County of Alameda,* 83 Cal.App.3d 69, 147 Cal. Rptr. 578, 582 (Cal.Ct.App.1978)).

The second test is whether the item is adapted to the property to which it is affixed. " 'An object placed on the realty may become a fixture if it is *a necessary or at least a useful adjunct to the realty,* considering the purposes to which the latter is devoted.' " *Rayl, supra,* 700 P.2d at 571 (quoting *Seatrain Terminals, supra,* 147 Cal.Rptr. at 582 (emphasis in original)).

■ The third part of the test for fixtures is the intention of the annexor in installing the item. This is the most important of the three factors, and focuses not on "the undisclosed purpose of the annexor, but rather the intention implied and manifested by his act." *Rayl, supra,* 700 P.2d at 571. Intention is therefore determined by the circumstances surrounding the installation. *Id.* The Idaho Court of Appeals has noted numerous factors from which an objective intention may be inferred:

> "(1) the nature of the article; (2) the manner of annexation to the land; (3) the injury to the land, if any, by its removal; (4) the completeness with which the chattel is integrated with the use to which the land is being put; (5) the relation which the annexer [sic] has with the land such as licensee, tenant at will or for years or for life or fee owner; the relation which the annexer [sic] has with the chattel such as owner, bailee or converter; (7) the local custom respecting treating such chattel as personal property or a fixture; (8) the time, place and degree of social, economic and cultural development, (e.g., a luxury in one generation is a necessity in another ...); and (9) all other relevant facts surrounding the annexation."

*Everitt v. Higgins,* 122 Idaho 708, 712, 838 P.2d 311, 315 (Ct.App.1992) (quoting R. Boyer, *Survey of the Law of Property,* ch. 14, at 329 (3d ed. 1981)).

■ The nature of the article is a device to capture and receive television signals for home entertainment purposes. In many ways, it is similar to an ordinary radio or television antenna, commonly installed on the roof of a home. The manner of annexation to the land is such as to facilitate

mechanical separation from the land by removing the dish. Only the concrete pad would remain firmly attached to the land, thus causing some minimal damage to the realty. Completeness with which the chattel is integrated with the use of the land is minimal since the item is a luxury item not necessary for the use of the land as a personal residence. The debtor is the owner of both the real and personal property and if she sold the real property, she would expect to be able to remove the satellite dish from the property. Such separation will be, if it is not already, the prevailing custom respecting the treatment of satellite dishes as such devices are apparently becoming more popular despite the availability of cable connections. Accordingly, the satellite dish is found to be personal property.

Debtor's counsel has not cited any legal authority supporting the debtor's right to avoid the lien. The security agreement has not been offered into evidence, nor has the debtor contended the security agreement was invalid; therefore, it must be assumed the sole basis of the debtor's attack is that no fixture filing was made. Because the satellite dish is not a fixture, no fixture filing is required. The Bank's lien will not be avoided on this ground.

■ It is also noted the debtor in a chapter 13 case has only limited standing to exercise avoidance powers under the Bankruptcy Code. As Judge Pappas has held:

> In sum, this Court will not extend the Chapter 13 debtor's powers beyond those provided in Section 522(h). In other words, a Chapter 13 debtor does not have full unilateral avoidance powers except as to involuntary transfers of otherwise exempt property, and then only if the trustee has not acted. In all other cases, other than the limited circumstances described in Section 522(f), the avoidance powers must be exercised by the trustee. *Jardine v. Bennett's Eastside Paint and Glass (In re Jardine)*, 120 B.R. 559, 562 (Bankr.D.Idaho 1990) (holding chapter 13 debtor had no standing to avoid a preference under section 547).

Even if the satellite dish was a fixture, then, the debtor would have no standing to attack the lien. This action cannot be brought directly under section 544.[1]

A separate order will be entered.

---

1. Section 544 provides in part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;