[Civ. No. 28525.   Second Dist., Div. One.   May 4, 1965.]

THE UNITED STATES NATIONAL BANK OF SAN DIEGO, Plaintiff and Respondent, v. THE COUNTY OF LOS ANGELES, Defendant and Appellant.

Harold W. Kennedy, County Counsel, and John D. Cahill, Deputy County Counsel, for Defendant and Appellant.

Landels, Ripley, Gregory & Diamond, Howard H. Taylor and Edward D. Landels for Plaintiff and Respondent.

WOOD, P. J.—This is an action to recover taxes paid under protest. The taxes were levied on safe deposit boxes in two of plaintiff's branch-bank offices in Long Beach. The question is whether the boxes were personal property or were a part of real property. Personal property of banks is exempt from local taxation. The court found that the boxes were personal property and not taxable. Defendant appeals from the judgment in favor of plaintiff.

Appellant contends that the boxes are fixtures, and therefore were subject to taxation as real property.

One of the branch offices is on Atlantic Avenue, and the other office is on Bellflower Boulevard. Each office building was constructed primarily for occupancy by a branch-bank office, and in each building there is a vault room. The vault rooms are designed for secure and fireproof storage of currency, records, and other "valuables" (including the valu-

ables of customers in safe deposit boxes),—the walls being made of reinforced concrete of greater thickness than the other walls of the building. The record does not show the dimensions of either vault room or the location of either room with reference to the other rooms in the building.

In the vault room at the Atlantic Avenue office there is a removable "sheet of metal wall" which divides the room into two parts, but the wall does not prevent access to one part from the other part. One part of the room is used for storage of the bank's records (which are in filing cabinets), the bank's currency (which is in a safe that is "sitting on four legs"), and the tellers' excess cash (which is in lockers assigned to the tellers). None of the equipment (cabinets, safe, or lockers) is attached to the floor or walls of the room. The other part of the room contains safe deposit boxes, and it is also used at night for storage of portable equipment such as filing boxes containing records of customer accounts and checks. The portable equipment is used by the clerks during the day and is "rolled" into the room at night because the records (in the equipment) are required by law to be stored under fireproof conditions. The safe deposit boxes, which vary in size, are in containers referred to as "nests." The nests are approximately 2 feet in length (front to back), 2 feet in width, and vary in height from 1 foot to 2 feet, and they weigh between 400 and 600 pounds each. The number of boxes in a nest varies from 6 to 50, depending upon the size of the particular boxes in the nest. The nests are stacked, one on top of the other, in several adjoining tiers against the north wall of the room. Each nest fits closely against other nests and is held in position by its weight. The complete panel of adjoining tiers of nests at this office weighs approximately 16,000 pounds. The tiers rest upon a wooden framework which is on the floor and is made of 2-inch-by-8-inch boards. It appears from photographs received in evidence that the framework under a group of tiers is about 8 inches high, and under another group it is about 4 inches high. The tops of the tiers are approximately 8 inches below the ceiling of the room. Between the tops of the tiers and the ceiling there is a wooden framework similar to the one that is under the tiers. The outer surface or front part of the framework (at the top and bottom of the tiers) is covered by a thin plate or sheet of polished steel trim which is fastened to the wooden frame by screws. The arrangement of the nests and the trim

or paneling creates a uniform and built-in appearance. The wooden framework at the bottom or the top of the tiers is not attached to the floor, wall, or ceiling of the building by cement, plaster, nails, bolts, screws, adhesive, or anything.

Prior to 1957 the Atlantic office was in another building and most of the safe deposit boxes which are in the present Atlantic office were in the former office. After the Atlantic office, including the safe deposit boxes, had been moved to the present location in 1960, there was an increased need for smaller boxes, and as a result some of the larger boxes were exchanged for smaller boxes which were at the Bellflower office.

When it was necessary to move the nests from one building to another, or to move them within the vault room, the nests were taken from the top of the tiers (by using small rollers) and placed upon a dolly which lowered the nests to a handcar on the floor. The nests were then "wheeled" on the handcar to a truck for transporting them to another building, or they were "wheeled" to another location in the room. At the new location the nests would be stacked in tiers by similar means. The floor, walls, or ceiling of the vault room were not damaged when the nests were moved.

The Bellflower Boulevard office was moved to its present location (from a nearby building) in 1956. In the vault room at the Bellflower office there is a removable thin wooden wall which divides the room into two parts for uses similar to the uses of the two parts of the Atlantic vault room. The nests in this office are placed in the vault room in adjoining tiers (against three walls, including the dividing wall) in a manner similar to the arrangement of the nests in the Atlantic office. The trim or paneling around the adjoining tiers is wood instead of steel. The paneling above the tiers in the center of the vault room (against the dividing wall) does not extend to the ceiling—a person standing in the part of the room where the nests are can see over the top of the tiers into the other part of the room. The tiers of nests in the Bellflower office weigh approximately 24,000 pounds. Some of the nests at the Bellflower office were brought there from its previous location, and additional boxes were purchased when the office was moved. Some of the boxes originally were placed along the west wall of the room (i.e., in the part of the room presently used for storage of the bank's records and currency), but these boxes were later removed and sold.

As above stated, some of the nests were exchanged for nests from the Atlantic office.

The court found that the boxes upon which the taxes were levied were located in the respective vault rooms; the boxes were not physically attached to the building, in which they were located, by cement, plaster, nails, bolts, screws, adhesive, or any other means; the decorative paneling or trim was installed for appearance only; the boxes, although relatively heavy (the nests weighing between 400 and 600 pounds), were readily removable without in any manner affecting the building or structure in which they were located; the boxes were not essential to the use of the vault room or building in which they were located nor essential to the use of any other property physically attached to the vault room or to the building; the boxes were not constructively affixed or annexed to the building or vault room in which they were located; and the boxes were not real property or improvements to real property, but constituted personal property belonging to plaintiff.

■ "Personal property of banks is exempt from local property taxation, but their real property is subject to such taxation." (*Pajaro Valley Bank* v. *County of Santa Cruz*, 207 Cal.App.2d 621, 625 [24 Cal.Rptr. 639]; see Cal. Const., art. XIII, § 16.) ■ "The excess franchise tax imposed on national banks [by section 23181 of the Revenue and Taxation Code] is in lieu of any tax on personal property." (*Bank of America* v. *County of Los Angeles*, 224 Cal.App.2d 108, 110 [36 Cal.Rptr. 413]; see Cal. Const., art. XIII, § 16; Rev. & Tax. Code, § 23182.)[1]

Section 104 of the Revenue and Taxation Code provides that " 'Real estate' or 'real property' includes:... (c) Improvements."

Section 105 of the Revenue and Taxation Code states that " 'Improvements' includes: (a) All buildings, structures, fixtures, and fences erected on or affixed to the land, except telephone and telegraph lines...."

Section 660 of the Civil Code provides: "A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs; or imbedded in it, as in the

---

[1]Section 5219 of the Revised Statutes of the United States (12 U.S.C. §548) provides that a state may not tax the personal property of banks if it imposes a tax measured by net income from all sources. (Section 23181 of the Revenue and Taxation Code of California imposes such a tax.)

case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster nails, bolts or screws . . . .''

In *Pajaro Valley Bank* v. *County of Santa Cruz, supra,* 207 Cal.App.2d 621 [24 Cal.Rptr. 639], four banks, in consolidated cases, sought to recover taxes paid on safe deposit boxes in vaults, under circumstances similar to the circumstances herein. The vaults were integral parts of the buildings, were specially designed, and would have been needed for the banks' use if safe deposit boxes were not rented to the customers. The vaults were divided into two compartments, one containing safe deposit boxes, and the other was used for storage of the banks' currency, securities, and records. In that case the boxes were in nests which were 2 feet in depth, 2 feet in width, and varied in height from 2 to 4 feet and in weight from 200 to 1,400 pounds. They were stacked, one on top of the other, in tiers along the walls of the vault. The tiers either rested on the floor or on 2-inch wooden frames which rested on the floor, but none of the boxes, nests, or wooden frames was attached to the walls, floor or ceiling of the vault, and the nests were occasionally moved by a dolly. The facing of the nests was trimmed by a polished metal frame. The trim was attached to the boxes except the trim above the boxes, and that was attached to a movable partition wall which separated the two compartments. The trial court therein found that the boxes were personal property and decided that they were not subject to taxation. The judgment was affirmed on appeal.

Appellant argues that the decision in the *Pajaro* case is not controlling in the present case, and in support thereof cites *Bank of America* v. *County of Los Angeles, supra,* 224 Cal. App.2d 108, 110 [36 Cal.Rptr. 413] wherein it was held that electronic computer systems and date bossers in certain bank buildings were fixtures. Appellant asserts further herein that the safe deposit boxes are fixtures because the weight of the nests of boxes is sufficient, as a matter of law, to effectuate a ''constructive annexation,'' and because there is a ''functional unity'' between the boxes and the vault rooms in which they are located. In the *Bank of America* case, the trial court found that the computer systems included several major components which were interconnected by *a mass of thousands of signal wires and cables housed underneath the floor* on which they were installed; the component parts of each system were held in place by their substantial

weight *and by the mass of interconnecting wires passing beneath the floor* on which they were installed, *and by other devices*; the data bossers were held in position by their substantial weight *and are further affixed by rigid metal compressed air pipes* which join them with an air compressor installed in the same building; except for emergencies plaintiff intended all of the computer systems and data bossers to remain in place until they became obsolete. The court also found that the computer systems and data bossers were fixtures and taxable as real property. The judgment therein was affirmed on appeal.

■ The present case is distinguishable from the *Bank of America* case. Here, as in the *Pajaro* case, the nests of boxes were not physically attached to the building by any means and were readily removable within the vault room and from one branch office to another; and, the trial court found that the boxes were not constructively annexed to the building or vault room, and that they were personal property. It cannot properly be concluded in the present case, as a matter of law, that the weight of the nests or tiers of boxes was sufficient to effectuate a constructive annexation.

■ It cannot properly be concluded herein, as a matter of law, that there was such functional unity with reference to the boxes and the vault room that the boxes should be regarded as fixtures. In the *Bank of America* case, the computer systems and data bossers were interconnected with a mass of thousands of signal wires and cables housed under the floor of the building. In the present case, the nests rested on frames which rested on the floor, and the nests were moved from time to time without damage to the floor or walls. Also, the vault rooms were constructed and used for secure and fireproof storage of the bank's records and currency—not merely as a place for the boxes. The court found that the boxes were not essential to the use of the vault rooms.

■ Appellant also contends that the evidence does not support certain findings, especially findings to the effect that the nests were readily removable and the boxes were not essential to the use of the vault room. There was evidence[2] that the rooms were used for fireproof storage of the bank's records and currency, and that the boxes had been moved, sold, and exchanged from time to time. It was stipulated

---

[2]Defendant presented no testimony. Defendant's evidence consisted of photographs of the boxes and documents relating to administrative interpretation.

that the judge might inspect the premises and receive testimony there. Pursuant thereto, the judge and the attorneys went into the vault rooms where testimony of witnesses for plaintiff was received. The testimony of the witnesses was reported in shorthand and transcribed. ■ As stated in the *Bank of America* case, *supra* (p. 114): ''Such view [of the premises by the judge] is evidence though not reflected in the record.... Such visual observation may have been the deciding factor in the court's testing of the intention of permanency as manifested by the physical facts.'' ■ There was sufficient evidence to support the findings.

■ Appellant further contends to the effect that since administrative interpretation has classified bank safe deposit boxes as fixtures and subject to taxation, that classification should be followed. By stipulation, the defendant introduced in evidence three letters which were in the form of directives of the State Board of Equalization to all county assessors. Also, by stipulation, page 515-1 of the Assessor's Handbook entitled, ''The Appraisal of Bank Premises,'' was received in evidence. The letters are dated in 1959, and are to the effect that thereafter bank safe deposit boxes are to be taxed as fixtures. (It was stipulated that prior to the date of these letters the defendant county did not tax bank safe deposit boxes.) Page 515-1 of the handbook, under the subheading, ''Background,'' states in effect that safe deposit boxes are to be deemed fixtures,—referring to cases cited in a footnote as authority for this position. The cases cited in this footnote (at the bottom of p. 515-1) were discussed in the *Pajaro* case, and it was held therein that they were not applicable in that case. It is to be noted that page 515-8 of the handbook (of which this court may take judicial notice) contains, under the same heading, ''Background'' (after a discussion of the general trend in modern branch-banking toward less bulky facilities), the following statement: ''In this respect, safe deposit boxes are now produced in smaller nests for *easy transfer from location to location.*'' (Italics added.) The asserted administrative classification of the boxes is not controlling.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied May 27, 1965, and appellant's petition for a hearing by the Supreme Court was denied June 30, 1965.