[Civ. No. 49978. First Dist., Div. Four. July 20, 1983.]

SECURITY DATA, INC., Plaintiff and Respondent, v.
COUNTY OF CONTRA COSTA et al., Defendants and Appellants.

COUNSEL

John B. Clausen, County Counsel, and Dennis C. Graves, Deputy County Counsel, for Defendants and Appellants.

Irving J. Kornfield for Plaintiff and Respondent.

Kenneth A. Ehrman and Ehrman, Flavin & Morris as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**RATTIGAN, J.**—The County of Contra Costa (County) and the City of Walnut Creek (City) appeal from a judgment refunding certain property taxes to plaintiff and respondent Security Data, Inc. (plaintiff).

## *Background*

Plaintiff is a subsidiary of Security National Bank, a national banking association (hereinafter identified by name or as the bank). At pertinent times, the bank owned certain components designed for use in a computer system. It also owned or controlled an office building located in the County and within the territorial limits of the City. The bank leased the components, and space in the building, to plaintiff. The components were installed in the leased space.

The County classified the components as real property assessed to plaintiff in the tax years 1973-1974, 1974-1975, and 1975-1976. Plaintiff paid the real property taxes consequently imposed in those years. Part of the taxes paid were remitted by the County to the City. Plaintiff subsequently claimed refunds of the taxes; exhausted its administrative remedies; and commenced two separate actions against the County and the City, seeking recovery of the taxes on the ground that the computer components had been erroneously classified as real property and illegally assessed as such. The County and the City filed answers in both actions, which were consolidated for trial.

Pursuant to an agreement reached by the parties at the commencement of the nonjury trial, the sole issue tried was whether the computer components were real property during the tax years in question, and taxable as such, or whether they were personal property and constitutionally exempt from taxation as personal property owned by a bank.[1] (See Cal. Const., art. XIII, § 27; Rev. & Tax. Code, §§ 23181-23182.) The evidence received at the trial was accordingly addressed to the question whether the components had been installed in the bank's building in such manner as to make them part of the real property as "fixtures" in the factual and legal sense of that term.

The trial court filed findings of fact and conclusions of law in which it determined that the computer components were not fixtures; that they had consequently retained their character as personal property owned by the bank, which meant that they were exempt from taxation; and that the as-

---

[1] Plaintiff's counsel informed the court of the agreed limitation as follows: "This morning the [County] assessor and the plaintiff and the defendants have reached an agreement, Your Honor, that we will stipulate as to all of the relevant facts as . . . [to] . . . payment and complying with all conditions precedent[,] exhausting all administrative remedies, the amounts and the dates and so forth, and try this case as to one issue and one issue only, and that is whether or not the computer components which were assessed . . . [to plaintiff] . . . constitute personal property or real property. . . . [O]n that issue, and that issue alone, we'll [*sic*: will] turn the question of whether or not the county . . . can tax these items because if the computers are personal property owned by a national bank, they are not subject to personal property taxation, whereas, if they are improvements [*sic*], they are part of the real property and they are subject to tax." Counsel for the County and the City concurred in these statements.

sessment of the disputed taxes to plaintiff had been "erroneous and invalid." The court thereupon entered a judgment which had the effect of refunding approximately $60,000 in back taxes to plaintiff. The appeal by the County and the City is from this judgment.

## The Evidence

We find it convenient to summarize the evidence in the approximate order in which the trial court received it. As pertinent at this point, the record of the trial supports the recitals separately captioned below.

## Plaintiff's Case

Claude Hutchison testified for plaintiff as follows: He is the president of Security National Bank and a member of plaintiff's board of directors. Plaintiff is a "wholly owned subsidiary" of the bank, and performs "data processing services"[2] for the bank and "outside clients." In 1969 and 1970, the bank constructed a building at 1500 Newell Avenue in Walnut Creek. Hutchison described the structure as "an eight-story general purpose office building." The bank "maintained control of the building," first as its owner and subsequently as "master lessee." The bank and various "outside tenants" occupied "general purpose office space" in the building.

In or about 1972, the bank leased the fifth floor of the building to plaintiff. In two separate written leases executed in November of that year, the bank also leased eight computer components to plaintiff. The components were explicitly described in the leases as a power unit, a processing unit, a console keyboard, a tape control unit, and four magnetic tape units. All eight components had been manufactured by International Business Machines Corporation (IBM), which had sold them to the bank. Plaintiff also leased four other computer components from IBM and another supplier.

Plaintiff installed all the components on the leased fifth floor of the building at 1500 Newell Avenue. The floor consisted of approximately 6,000 square feet of office space. It was "[b]asically a shell," with the "whole floor open," when plaintiff leased it. The bank made "improvements" on the floor in accordance with plaintiff's specifications. The "improvements" included the physical arrangements for a "computer room," in which the several components were installed and operated as a single computer system. The area of the computer room was approximately 2,000 square feet, or about one-third of the fifth floor. The rest of the floor was used by

---

[2]Hutchison and other witnesses used the terms "data processing" and "computer" as interchangeable adjectives.

plaintiff as "[o]ffice space primarily, meeting, conference rooms." The "improvements" installed for the computer room included partitions which separated the room from the rest of the floor; a "raised floor . . . to accommodate the data processing equipment" in the room; and "supplemental air conditioning equipment in order to handle the very great amount of heat that this type of equipment generates."

Hutchison testified that it was never intended that plaintiff would "remain permanently" in the building at 1500 Newell Avenue. In September of 1978, plaintiff vacated the fifth floor of the building and moved to a new location in Concord. The computer components were moved to the new location.

Plaintiff also called William Bauer, its president. He had been involved in the "data processing field" for 22 years. He described the computer system and its installation in detail, as follows: The "raised floor" in the computer room was a horizontal surface which was positioned about one foot above the regular floor surface. It consisted of approximately 400 contiguous metal panels. Each of the panels was two feet square, weighed approximately fifty pounds, and was portable. In place as part of the "raised floor," each panel rested in a metal frame. The frames in turn rested on vertical "jacks" which were located at the common corners of the panels. The computer components rested on the panels, but were not fastened to them in any way. The panels were not fastened to the frames, and the frames were not fastened to the jacks. Each jack had a small square base which was glued to the floor surface of the computer room. (i.e., to the fifth floor of the building) with a strong adhesive (or "mastic"). This was done to "keep the jack from shifting." Bauer had seen the jacks "kicked over when they're taking the floor down."

The computer system used 220-volt power which was delivered to it from a "dedicated electrical power source" in the building: i.e., from 220-volt wiring which supplied the system alone. The several components of the system were interconnected with heavy-duty electrical cables which lay about under the "raised floor." The cables were manually plugged into outlets in the components and in the 220-volt wiring. The computer system was equipped with a "freestanding" air conditioning unit which also rested on the "raised floor." The unit required a water supply, refrigerant, electrical power, and a drain. The power and the drain "ran under the raised floor." The water and refrigerant were supplied from pipes which "ran in the ceiling." The "same type of installation was [used] in several different places" throughout the bank's building.

The air flow from the air conditioning unit moved under the raised floor and "not in ducts." The purpose of the raised floor was to accommodate

the electrical cables and the air flow. Bauer testified that it is "more difficult to work in a computer room where the cables are exposed." He would "certainly recommend . . . [a raised floor] . . . as a required method of operation," and IBM recommends it for "data processing systems of . . . [this] . . . magnitude."

Each of the computer components was equipped with permanent wheels at its base, and various components were "moved from time to time." On several occasions when this was done, a component was removed and replaced with a technologically improved unit. A person moving a component would lift the floor panels manually, with a "suction cup device," and "unplug the unit, roll it over" to another location, and "replug it."

Bauer also testified that the move of the computer system from 1500 Newell Avenue to Concord, in 1978, was accomplished on a single Saturday. Early in the morning, "the engineers began to disconnect the various boxes so that the devices could be rolled off the floor." As the components were disconnected, their doors were taped shut and they were "rolled out and onto the moving vans." The regular passenger elevators in the building were used when the components were removed from it. They "began to arrive" at the new location in Concord before noon, and the entire computer system was installed and "operational" there by 11 p.m. on the same day. Plaintiff paid $8,055.30 to a commercial mover for the entire move, which included the air conditioning unit and all the furniture and equipment plaintiff had used in the office areas outside the computer room at 1500 Newell Avenue.

Bauer testified that the "raised floor" and the computer room partitions were removed from the fifth floor after plaintiff moved to Concord. Before the move, plaintiff had a similarly "raised floor" installed at the Concord location by a contractor. The cost of the new "floor" to plaintiff was $20,000 plus the old "floor," which was traded in to the contractor. The new "floor" was two to three times greater in area than the old one.

*The Defense*

Recalled by the defense, Bauer further testified that 220-volt wiring was not "a standard installation throughout the building" at 1500 Newell Avenue, but that certain machinery on other floors of the building also "required it." The partitions which "closed off the computer room . . . from the remainder of the fifth floor" consisted of "movable panel[s]." Their use did not involve "permanent studs." They were "pushed together," and they "slid" in tracks which were "fastened to the floor and ceiling" on the fifth floor of the building.

The defense also called David Nitchman and Jerry Underwood, both of whom qualified as experts in the "data processing field." Nitchman testified that he had seen the computer system at 1500 Newell Avenue on two occasions, and that "the only purpose . . . for having a raised floor in . . . a building such as this would be for a data processing system." Underwood testified that "a raised floor installation on a system of this magnitude is really a necessity." He had been in the building at 1500 Newell Avenue after the computer system had been moved in 1978. There was a "major remodeling going on" on the fifth floor, and the "raised floor" had been removed.

### Evidence of Sizes and Weights

Both sides introduced photographs of the computer components in place on the fifth floor at 1500 Newell Avenue. Plaintiff also introduced pictures taken during the move from that location in 1978. Each component shown in the photographs is a large box-like unit resembling an oversized or undersized office file cabinet.

The weight of each of the components was also shown as it had been established, without dispute, in answers to pretrial interrogatories and requests for admissions. Of the eight components directly involved in the consolidated action (i.e., the units plaintiff had leased from Security National Bank, which owned them), the heaviest unit weighed 2,125 pounds. The lightest weighed approximately 180 pounds, one weighed 600 pounds, and the others weighed approximately 800 pounds each. The weights of the four other components (which plaintiff had leased from other suppliers) ranged from 2,675 pounds down to 150 pounds. Photographs taken during the move to Concord support an inference that all of the components were easily tilted onto dollies and rolled about by hand.

### The Findings and Conclusions

The trial court made findings of fact in which the computer installation at 1500 Newell Avenue was described in exhaustive detail. In two of the findings (Nos. 15 and 25), the court found that the vertical jacks, the metal frames, the panels used in the "raised floor," and the walls of the computer room were "improvements" which were "movable." The court made a terminal finding (No. 52) that the "computer system" and "each component thereof" were "'personal property' and not a 'fixture.'" Parts of the con-

text in which finding No. 52 appears, and the court's conclusions of law, are reproduced in the margin.[3]

*Review*

We first examine the terminal finding that none of the computer components was a fixture (No. 52) in light of the traditional tests to be applied in determining whether an item placed on real property is a fixture, and part of the realty, for purposes of its taxation. The pertinent tax statutes define "real property" to include land and "improvements" (Rev. & Tax. Code,

---

[3]The court found and concluded as follows:

"FINDINGS OF FACT

" . . . . . . . . . . . . . . .

"28. The computer system was installed at 1500 Newell Avenue in such a manner that it could be (and subsequently was) removed without substantial injury to the building.

"29. It was never intended that the computer system be permanently affixed to the real property.

"30. The appearance of the computer system at its location never manifested an intent that it be permanently affixed to the real property.

" . . . . . . . . . . . . . . .

"32. Only about one-third of the [bank's] general office building was used for the computer system. Two-thirds of that floor plus seven additional floors of the building were usable for other general purposes.

"33. The building was not specifically designed for use as a computer operation. The floors were not specifically strengthened, and the building was not altered or modified for such use. The false floor [*sic*] and other factors such as airconditioning and electricity did not require any modification of the building other than might be required to adapt general purpose building space for use by lawyers, doctors, brokers or other tenants.

" . . . . . . . . . . . . . . .

"45. The equipment at issue herein was not affixed to the land nor to any improvements nor were any of said components permanently attached to what was . . . permanent as by means of cement, plaster, nails, bolts or screws.

"46. The equipment at issue was located in the general-purpose . . . office building; now that the computer equipment is not located there, the space which it occupied can be utilized for any number of other purposes.

" . . . . . . . . . . . . . . .

"50. The computer system, including the leased equipment in question herein, was not *constructively affixed to the aforementioned computer room merely because its installation in that location was incidental to plaintiff's basic purpose of supplying data processing to its parent company and others.

"51. The computer system does not constitute a 'unit for use' with either the building nor the room within which it was housed.

"52. The computer system, and each component thereof, constitutes 'personal property' and not a 'fixture.' . . ."

"CONCLUSIONS OF LAW

"1. The imposition of the tax on the personal property computer systems owned by Security National Bank . . . was erroneous and invalid under . . . Revenue and Taxation Code § 23182.

"2. Plaintiff is entitled to a judgment against the defendants for all amounts paid together with interest at the legal rate from the respective dates of filing its claims for refund to the date of judgment."

§ 104) and "improvements" to include "fixtures." (*Id.*, § 105.)[4] ■ "Fixtures" are therefore "real property" for purposes of taxation. (*T. M. Cobb Co.* v. *County of Los Angeles* (1976) 16 Cal.3d 606, 623-624 [128 Cal.Rptr. 655, 547 P.2d 431].) The term "fixture" is defined by statute as a "thing . . . [which is] . . . affixed to land when . . . permanently resting upon it, as in the case of buildings . . . or permanently attached to what is thus permanent" by any of several illustrative "means." (Civ. Code, § 660.)[5]

■ In determining whether a given item is a fixture, a trial court must consider (1) the manner in which the item is annexed to the underlying realty; (2) its adaptability to the use and purpose for which the realty is used; and (3) the intention with which the annexation was made. (*Simms* v. *County of Los Angeles* (1950) 35 Cal.2d 303, 309 [217 P.2d 936]; *Seatrain Terminals of California, Inc.* v. *County of Alameda* (1978) 83 Cal.App.3d 69, 74 [147 Cal.Rptr. 578]; *Specialty Restaurants Corp.* v. *County of Los Angeles* (1977) 67 Cal.App.3d 924, 933 [136 Cal.Rptr. 904].) "In making the determination in a particular case the element of intent is regarded as a crucial and overriding factor, with the other two criteria being considered only as subsidiary ingredients relevant to the determination of the intent." (*Seatrain Terminals of California, Inc.* v. *County of Alameda, supra,* at p. 75; see also *M. P. Moller, Inc.* v. *Wilson* (1936) 8 Cal.2d 31, 37 [63 P.2d 818].)

For purposes of taxation, the intention must be determined as an *objective* matter shown by the physical facts; it is not a question of the parties' *subjective* intent. (See *Seatrain Terminals of California, Inc.* v. *County of Alameda, supra,* 83 Cal.App.3d 69 at p. 74; see also *Trabue Pittman Corp.* v.

---

[4]These sections appear in division 1 of the Revenue and Taxation Code (Property Taxation), part 1 (General Provisions), chapter 1 (Construction). Chapter 1 commences with section 101, which provides: "Unless the context otherwise requires, the general provisions hereinafter set forth govern the construction of this division."

Section 104 provides in pertinent part: " 'Real estate' or 'real property' includes: [¶] (a) The possession of, claim to, ownership of, or right to the possession of land. . . . [¶] (c) Improvements."

For purposes of the present case, section 105 provides in pertinent part: " 'Improvements' includes: [¶] (a) All buildings, structures, fixtures, and fences erected on or affixed to the land . . . ."

[5]Civil Code section 660 provides in pertinent part: "A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees . . . ; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws . . . ."

*County of L.A.* (1946) 29 Cal.2d 385, 393 [175 P.2d 512].) ▇ Whether an item annexed to realty has lost its character as personalty (because it is a fixture) is primarily a question of fact to be determined by the trier of fact, and its findings will be upheld on appeal if they are supported by substantial evidence. (*Seatrain Terminals of California, Inc.* v. *County of Alameda, supra,* at pp. 79-80; *Bank of America* v. *County of Los Angeles* (1964) 224 Cal.App.2d 108, 114 [36 Cal.Rptr. 413, 6 A.L.R.3d 491]; see also *M. P. Moller, Inc.* v. *Wilson, supra,* 8 Cal.2d 31 at pp. 38-39.)

▇ The following circumstances shown in the evidence are pertinent to the trial court's finding that none of the computer components was a fixture:

(1) The building in which the components were installed was a "general purpose office building," which meant that it was not built or used for any special purpose involving the use of the computer system. (See *Bank of America* v. *County of Los Angeles, supra,* 224 Cal.App.2d 108 at p. 113.)

(2) Conversely, the components were not essential to the purpose for which the building was constructed and used, and their location and use in the building were not materially associated with that purpose. (See *Specialty Restaurants Corp.* v. *County of Los Angeles, supra,* 67 Cal.App.3d 924 at p. 936; *United States Nat. Bank* v. *County of Los Angeles* (1965) 234 Cal.App.2d 195, 201 [44 Cal.Rptr. 286]; *Pajaro Valley Bank* v. *County of Santa Cruz* (1962) 207 Cal.App.2d 621, 627-628 [24 Cal.Rptr. 639].)

(3) The president of the bank testified that it was never intended that plaintiff (and therefore the computer components) would remain in the building permanently.

(4) Each of the components of the computer system was mounted on wheels, only two of them weighed as much as one ton, the others weighed less than half a ton each, and each could readily be unplugged and moved without damaging or substantially disturbing the computer room. (See *United States Nat. Bank* v. *County of Los Angeles, supra,* 234 Cal.App.2d 195 at p. 201.)

(5) The entire system was moved out of the building without substantial difficulty, expense, or consumption of time. (See *Specialty Restaurants Corp.* v. *County of Los Angeles, supra,* 67 Cal.App.3d 924 at p. 934.)

(6) The components were not "destroyed" when they were moved. (See *San Diego T. & S. Bank* v. *San Diego* (1940) 16 Cal.2d 142, 148-149 [105 P.2d 94, 133 A.L.R. 416].)

The trial court reasonably determined from these circumstances that it was not intended that any of the components be permanently annexed to the building; that the manner in which any of them was annexed did not establish that it was a fixture; and that the components had no significant "adaptability" to the use and purpose of the building. (See the findings quoted in fn. 3, *ante*; see also *Simms* v. *County of Los Angeles, supra,* 35 Cal.2d 303 at p. 309; *Seatrain Terminals of California, Inc.* v. *County of Alameda, supra,* 83 Cal.App.3d 69 at p. 74.) The trial court's terminal finding that none of the components was a "fixture" (No. 52) is therefore supported by substantial evidence.

According to the traditional tests, our review could end here on the bases that the terminal finding is supported by substantial evidence and that it alone supports the judgment. (See *M. P. Moller, Inc.* v. *Wilson, supra,* 8 Cal.2d 31 at pp. 38-39; *Seatrain Terminals of California, Inc.* v. *County of Alameda, supra,* 83 Cal.App.3d 69 at pp. 79-80; see also *Brewer* v. *Simpson* (1960) 53 Cal.2d 567, 584 [2 Cal.Rptr. 609, 349 P.2d 289]; *Mayes* v. *Sturdy Northern Sales, Inc.* (1979) 91 Cal.App.3d 69, 81 [154 Cal.Rptr. 43]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 235, pp. 4225-4226.) We are required to go further, however, because the County and the City contend (1) that the items "constituting the computer room were improvements to the building" at 1500 Newell Avenue and (2) that the computer components were "constructively affixed" to those improvements according to the so-called "unit for use" test.

The second contention invokes the concepts of "constructive annexation" and "unit for use," which have been recognized in the "modern trend of case law" as departures from the traditional tests for determining whether an article placed on real property is a fixture. (*Seatrain Terminals of California, Inc.* v. *County of Alameda, supra,* 83 Cal.App.3d 67 at p. 75.) The trial court negated the application of both concepts in its findings that the computer components were not "constructively affixed to the . . . computer room" at 1500 Newell Avenue (finding No. 50) and that the "computer system" (a term which necessarily includes each component) did not "constitute a 'unit for use'" with the building or the computer room (No. 51). (See fn. 3, *ante*.) The County and the City are thus urging that these findings were erroneous as matters of law. We disagree.

According to the application of the concepts of "constructive annexation" and "unit for use" in California case law, an item placed on real property, but not physically fastened or otherwise attached to it, may be deemed "constructively annexed" to it, and therefore part of it as a fixture, if the item is used in such a way that it constitutes a "unit for use" with another item which is a fixture because it *is* attached to the realty. (See,

e.g., *Southern Cal. Tel. Co.* v. *State Board* (1938) 12 Cal.2d 127, 138 [82 P.2d 422]; *Seatrain Terminals of California, Inc.* v. *County of Alameda, supra,* 83 Cal.App.3d 69 at pp. 75-76; *Pajaro Valley Bank* v. *County of Santa Cruz, supra,* 207 Cal.App.2d 621 at p. 627; see also *Specialty Restaurants Corp.* v. *County of Los Angeles, supra,* 67 Cal.App.3d 924 at pp. 936-937.)

The concepts cannot apply here for at least two reasons. In the first place, the trial court expressly found that the items with which the computer components were used in the bank's building (the jacks, the metal frames, the panels in the "raised floor," and the computer room partitions) were "improvements" only. ■ The terms "improvement" and "fixture" are not necessarily synonymous. Revenue and Taxation Code section 105 defines "improvements" to *include* "fixtures" *and* "structures" which are "erected" on land as well as "affixed" to it. (See fn. 4, *ante.*) In a case involving the distinction for purposes of provisions in a lease of the real property involved, the Supreme Court held in pertinent part: ". . . [T]he term 'improvement' is comprehensive enough to embrace all additions or alterations which may be made by a tenant for the convenience of his business upon the premises. It is much more comprehensive than the word 'fixture,' and while including these [*sic*], includes also many things that may not be classified as fixtures." (*Realty Dock etc. Corp.* v. *Anderson* (1917) 174 Cal. 672, 676-677 [164 P. 4]; see also 37 Cal.Jur.3d, Improvements to Realty, § 1, pp. 601-602.)

■ In the present case, the trial court in effect recognized the distinction by finding that the "improvements" mentioned were "movable." This finding is also supported by substantial evidence. It follows that the computer components were not "constructively annexed" to the building, according to the "unit for use" test, because they did not constitute a unit for use with anything which was itself attached to the building as a fixture.

Moreover, it is clear from the terminology used in the decisions involving the concepts of "constructive annexation" and "unit for use" that the concepts may be applied only where the use of the nonattached item is significantly associated with the purpose for which the building in question is used. (See, e.g., *Southern Cal. Tel. Co.* v. *State Board, supra,* 12 Cal.2d 127 at p. 136 ["necessary or convenient to the use of a building for the purpose for which it is designed"]; *Seatrain Terminals of California, Inc.* v. *County of Alameda, supra,* 83 Cal.App.3d 69 at p. 79 ["a necessary or at least a useful adjunct to the realty" (italics omitted)]; *id.,* at pp. 75, 77 ["necessary," or "integral"]; *Specialty Restaurants Corp.* v. *County of Los Angeles, supra,* 67 Cal.App.3d 924 at p. 936 ["integral to the purpose for which the land is used"]; *United States Nat. Bank* v. *County of Los Angeles,*

*supra,* 234 Cal.App.2d 195 at p. 201 ["functional unity"]; *Pajaro Valley Bank* v. *County of Santa Cruz, supra,* 207 Cal.App.2d 621 at p. 627 ["essential to the purposes of predominant fixtures"].)

In the present case, the trial court clearly found that the use of the computer components was not associated with the "general" purpose and use of the building in which they were installed. (See findings 32, 33, and 46, quoted in fn. 3, *ante.*) These findings are also supported by substantial evidence. The concepts of "constructive annexation" and "unit for use" may not be applied for that reason. The court's findings rejecting their application (Nos. 50 and 51) are accordingly correct.

In support of the contention that they are entitled to have the concepts applied in their favor as a matter of law, the County and the City place great reliance on *Bank of America* v. *County of Los Angeles, supra,* 224 Cal.App.2d 108. The property involved in that case consisted of seven separate "electronic computer systems" owned by the plaintiff, a bank. (224 Cal.App.2d at pp. 110, 113.) One of the systems was installed in each of seven separate buildings also owned by the bank. As in the present case, the systems were assessed as fixtures and taxed as real property by the defendant county; the taxes were paid; and the plaintiff brought an action for their recovery, contending that the systems were personal property and not fixtures. (*Id.,* at p. 110.) Unlike the present case, the trial court found that they were fixtures and entered a judgment denying relief. (*Ibid.*)

The Court of Appeal affirmed on the basis that the trial court's findings were supported by substantial evidence and that they supported the judgment. (224 Cal.App.2d at p. 113.) The court cited various factors shown in the evidence, several of which appear in the present case (notably the facts that each of the buildings had a "raised floor" and specialized air conditioning). (See *ibid.*) Unlike this case, however, all but one of the seven buildings were "special purpose buildings, designed as accounting centers requiring the computer systems"; the components of each system were interconnected with "hundreds" of cables; the "raised floor" had been installed in each building at "great cost"; the design and dimensions of each system apparently required that it be regarded as a single unit whose "size and weight (11 tons to each system) . . . militate[d] against moving" it; and "substantial expense was entailed in relocation of any of the components requiring much labor and highly skilled electronic technicians . . . ." (224 Cal.App.2d at pp. 113-114.)

The distinguishable facts shown in the present evidence are obvious. They demonstrate that the only relevant conclusion supported by *Bank of America* pertains to the application of the substantial evidence rule. With the neces-

sary exception of one case in which the Court of Appeal characterized the evidence as "uncontradicted" and the facts as "undisputed" (*Specialty Restaurants Corp.* v. *County of Los Angeles, supra,* 67 Cal.App.3d 924 at pp. 937, 941), the courts have consistently held that the substantial evidence rule is controlling in the review of judgments involving the concepts of "constructive annexation" and "unit for use." (See, e.g., *Seatrain Terminals of California, Inc.* v. *County of Alameda, supra,* 83 Cal.App.3d 69 at pp. 79-80; see also *M. P. Moller, Inc.* v. *Wilson, supra,* 8 Cal.2d 31 at pp. 38-39.) The rule controlled in *Bank of America.* (See *Bank of America* v. *County of Los Angeles, supra,* 224 Cal.App.2d 108 at p. 113.) It controls here, and it requires affirmance of the judgment. Other contentions made on the appeal need not be reached.

The judgment is affirmed.

Caldecott, P. J., and Poché, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 6, 1983.