[Civ. No. 67440. Second Dist., Div. Three. Nov. 2, 1984.]

MORSE SIGNAL DEVICES OF CALIFORNIA, INC.,
Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

## COUNSEL

Murphy, Thornton, Hinerfeld & Elson, David A. Juhnke, Gold, Herscher, Marks & Pepper, Stephen W. Kramer, Rodi, Pollock, Petther, Galbraith & Phillips, John D. Cahill and William M. Aitken for Plaintiff and Appellant.

John H. Larson, County Counsel, Donald K. Byrne, Chief Deputy County Counsel, and Edward G. Pozorski, Deputy County Counsel, for Defendants and Respondents.

## OPINION

### ARABIAN, J.—

#### INTRODUCTION

Plaintiff and appellant, Morse Signal Devices of California (Morse), appeals from that portion of a trial court judgment which held that it is not entitled to a refund of certain ad valorem[1] property taxes paid under protest

---

[1]Black's Law Dictionary (1951) defines "*Ad Valorem*" to mean "According to value." (*Id.*, at p. 58.) "The term *ad valorem* tax means a tax or duty upon the value of the article or thing subject to taxation." (*Ibid.*)

to defendant and respondent, the County of Los Angeles (County). We affirm the judgment of the trial court.[2]

FACTS

Morse is engaged in the business of selling, installing, monitoring and servicing burglar alarm systems. The systems are of various types and include both central alarm systems, which are monitored by Morse through signals transmitted over public utility lines, and local alarm systems, which rely on an alarm bell and flashing lights, and are not centrally monitored. The local alarm systems are sold outright to Morse customers, are not Morse's property, and are not the subject of this appeal.

The installed central alarm system consists of (1) the major component parts—a transmitter, the bell box and electronic sensing devices—all of which are easily removed from the subscribers' premises and (2) the minor component parts—"foundational wiring," contacts and metallic tape (and the costs of labor for its installation)—which are difficult to remove from the subscribers' premises without damaging the property.

The installation of a centrally monitored alarm system is an elaborate undertaking. The major component parts of the system are connected to an extensive foundational wiring system which is affixed to the subscribers' premises by means of clamps, screws, bolts and other means of attachment. To prevent detection of the system, the foundational wiring is concealed in conduits and walls, under carpets, above and behind drop ceilings, and behind floor casings. A cable is suspended from the utility pole to the subscribers' premises in much the same fashion as a telephone cable. The cable is made to enter the subscribers' premises where it is connected with the major component parts of the system. A signal is transmitted through this cable to Morse's central station whenever a breach of the system occurs. When Morse receives the signal, it contacts the police or fire department and dispatches its personnel to the premises for investigative purposes.

Upon installation of the system, the subscriber pays an installation fee to Morse and then pays a monthly service fee for continued monitoring. The

---

[2]Upon petition for rehearing by appellant, on the ground, inter alia, that the appeal was heard and decided originally by a panel which inadvertently included a justice who had served as a pre-hearing conference judge (a violation of rule 19.5(b) of the Cal. Rules of Court), a rehearing was granted and the cause set for reargument. We have reached the same conclusion as did the panel which rendered the decision on the original appeal. (See *Morse Signal Devices* v. *Los Angeles County* (Cal.App.).)

installation fee is shown as income on Morse's books and records and as an expense on the books of the Morse subscribers.

In March of 1977, County assessed *personal* property ad valorem taxes against Morse for the minor component parts of the burglar alarm systems Morse monitored in 1972 through 1975. The assessments were levied as escaped assessments for those years and penalties and interest were added to the taxes allegedly due. Morse appealed the assessments to the Assessment Appeals Board of Los Angeles County (Rev. & Tax. Code, § 1603), which held that the minor component parts of the systems subject to the escaped assessments were fixtures permanently affixed to the premises of the Morse subscribers, that they were thus assessable as *real property,* and that they were assessable and taxable to Morse, rather than to the subscribers.

In March of 1978, County assessed the Morse burglar alarm systems as *real property,* included the minor component parts in the assessment, and levied the taxes against Morse. Morse was again unsuccessful in appealing the assessment. Morse paid the taxes, penalties and interest due for the years 1972 through 1975 and for the year 1978 under protest and, after exhausting its administrative remedies, brought the instant action for refund of taxes, penalties and interest paid on the minor component parts of the systems.

Morse did not challenge the taxes levied on the major component parts of its burglar alarm systems. It challenged only the assessments for the minor component parts of the systems which were permanently affixed to its subscribers' premises.[3] The amount of assessments for the minor component parts was determined mainly by the cost of the labor for its installation, since the cost of the wire, foil and other minor parts was relatively insignificant.

Since Morse revised its installation and service agreement in 1977, the trial court noted in its "Statement of Decision" that it was necessary to consider separately Morse's tax liability for the years 1972 through 1975, when the "First Contract" was in effect, and the year 1978, when the "Second Contract" was in force. The trial court described the first and second installation and service agreements in its Statement of Decision as follows:

"1. *First Contract*

---

[3]Credible evidence was introduced by Morse to show that in 1973, after an audit for years 1968 through 1971, Morse reached an agreement with the County Assessor's office that only the cost of major component parts of the systems, and the insignificant installation costs attributable to those parts, were to be reported by Morse for purposes of ad valorem taxation.

"The First Contract, which was utilized by Morse for all installations made during the tax years 1972 through 1975, was a standard contractual agreement for the installation and servicing of alarm systems. In order to protect the system from destruction or tampering by the subscriber and to assure its operability to the benefit of the subscriber, Morse inserted in the First Contract a clause which provided that all portions of the system would technically remain the property of Morse. The subscriber, however, agreed to protect the property and bore the risk of loss or damage thereto.[4] Although the First Contract provided that upon termination of the service agreement Morse had the right to remove all parts of the installed system, Morse never removed any part of the system from the subscriber's premises, other than, on occasion, the major component parts, and even then such action was taken only with the consent of the subscriber. At no time did Morse ever remove the foundational wiring system once it was installed on the premises of the subscriber. Upon installation, that wiring became permanently affixed to the real property of the subscriber, and upon termination of the service agreement, it remained on the subscriber's premises and could be utilized by him in any manner which he so desired.

"2. *Second Contract*

"In 1977, Morse revised its standard installation and service contract to make explicit what had been Morse's policy all along: ownership of the installed alarm system, with the exception of the major component parts, vested in the subscriber upon completion of installation into the subscriber's premises. Again, the subscriber was responsible for protecting the property and bore the risk of loss or damage thereto. [¶] Under the Second Contract, Morse had no right to remove any portion of the permanently installed [minor component parts] upon termination of the service agreement, and the subscriber was entitled to utilize that system in any manner he saw fit following such termination."[5]

---

[4]Paragraph (7) of the First Contract provides: "PROTECTION OF EQUIPMENT. The entire system, including all devices, instruments, appliances and all connections, wires, conduits and other materials associated therewith except telephone company leased lines, is and shall at all times remain the sole property of Morse. The Subscriber does hereby agree to protect the said equipment and to indemnify and pay to Morse the cost of repair or replacement for any loss or damage to Morse's equipment, including but not limited to loss by fire, earthquake, riot, flood or other damage or destruction."

[5]Paragraph (14) of the Second Contract provides: "14. TITLE TO EQUIPMENT; REMOVAL OF SYSTEM: Subscriber acknowledges and agrees that this Agreement is for the providing of service only and that except as hereinafter provided, the major components installed herein, including but not limited to transmitters, detection devices, bell boxes and controls shall at all times remain the sole property of MORSE. Upon the expiration of this Agreement or upon any default as herein set forth, MORSE is authorized to enter upon the premises of Subscriber and remove all the MORSE owned equipment. Removal of MORSE owned equipment shall be without prejudice to the collection of any and all sums due under the entire Agreement or

After describing the two contracts, the trial court determined that, inasmuch as the minor component parts of the Morse Burglar Alarm Systems are never removed once installed, they are properly classified as permanent fixtures on the subscriber's property; that under the First Contract Morse retained a right of removal and title to the minor and major component parts; that under the Second Contract title to the minor component parts transferred specifically to the subscriber upon installation, but Morse retained title to the major component parts. The court concluded that both portions of the system could not operate without being connected together, and since Morse conceded it is taxable on the major component parts, each system must be considered in its entirety. Therefore, the trial court held that because Morse retained title to a "segment of the operating system" under the terms of either the First Contract or the Second Contract, both the major and minor parts of the Morse burglar alarm systems are taxable to Morse.

The trial court determined, however, that Morse was entitled to a refund from County of the penalty assessments collected for the years 1972 through 1975. Morse, therefore appeals only from that part of the trial court's judgment which held that the minor component parts of its burglar alarm systems are taxable to it for the years 1972 through 1975 and for the year 1978.

### ISSUES

1. Whether the minor component parts of the Morse burglar alarm systems, which the trial court determined are "fixtures" permanently attached to the subscribers' real property, may properly be assessed and taxed against Morse, rather than the subscribers.

2. Whether the assessment to Morse of the entire value of the burglar alarm systems was arbitrary and discriminatory in light of the fact that essentially identical permanently installed Morse *fire* alarm systems were assessed to the subscribers.

---

extensions or renewals thereof. Subscriber shall, in such event, return the said MORSE owned equipment to MORSE in good condition, reasonable wear and tear excepted.

"Upon completion of the installation, title to all of the nonrecoverable equipment, materials, supplies, including but not limited to, wire, cable, foil, conduit, screens and the labor for the installation of the system shall vest in the Subscriber. Notwithstanding the foregoing, during the term of this Agreement, Subscriber will not damage, alter, add to, encumber, remove, tamper with or dispose of any portion of this system or permit the system to be damaged, altered, added to, encumbered, taken from the premises, tampered with, or repaired by anyone who is not an authorized agent of MORSE. In the event of loss or damage to any portion of this system, whether owned by MORSE or Subscriber, Subscriber agrees to pay to MORSE the reasonable value for the replacement or repair of the MORSE owned equipment or the installation on the Subscriber's premises. Subscriber agrees that the installation of the MORSE owned equipment does not create a fixture to Subscriber's premises as to that equipment."

3. Whether the trial court erred in finding the assessment to Morse of the minor component parts of the Morse burglar alarm systems constitutes illegal double taxation.

## DISCUSSION

1. *The minor component parts of the Morse burglar alarm systems, which the trial court determined are "fixtures" permanently attached to the subscribers' real property, may properly be taxed against Morse.*

■ Under the state Constitution and the Revenue and Taxation Code, all property in California that is not free from taxation under federal or California law is subject to taxation in proportion to its value. (Cal. Const., art. III, § 1; Rev. & Tax. Code, § 201.) The word "property" as used in the Constitution is construed in its ordinary and popular sense. (See *Cottle* v. *Spitzer* (1884) 65 Cal. 456, 461 [4 P. 435].) The Revenue and Taxation Code defines property comprehensively to include "all matters and things, real, personal, and mixed, capable of private ownership." (Rev. & Tax. Code, § 103.)

■ It is axiomatic that whether property has lost its character as personalty and has become a fixture, and therefore real property, is primarily a question of fact to be determined by the trier of fact, whose findings must be upheld on appeal when supported by substantial evidence. (*Security Data, Inc.* v. *County of Contra Costa* (1983) 145 Cal.App.3d 108, 118 [193 Cal.Rptr. 121]; *Seatrain Terminals of California, Inc.* v. *County of Alameda* (1978) 83 Cal.App.3d 69, 79 [147 Cal.Rptr. 578].)

■ It is well settled that the definition of property contained in the Revenue and Tax Code controls the classification of property for tax purposes. (*Trabue Pittman Corp.* v. *County of L. A.* (1946) 29 Cal.2d 385, 393 [175 P.2d 512]; *Specialty Restaurants Corp.* v. *County of Los Angeles* (1977) 67 Cal.App.3d 924, 933 [136 Cal.Rptr. 904]; *Tele-Vue Systems, Inc.* v. *County of Contra Costa* (1972) 25 Cal.App.3d 340, 343 [101 Cal.Rptr. 789].)

■ The relevant tax statutes define real property to include "Improvements" (Rev. & Tax. Code, § 104, subd. (c)) and define "Improvements" to include "fixtures" (Rev. & Tax. Code, § 105, subd. (a)). Fixtures are therefore real property for purposes of taxation. (*T. M. Cobb Co.* v. *County of Los Angeles* (1976) 16 Cal.3d 606, 623-624 [128 Cal.Rptr. 655, 547 P.2d 431]; *Security Data, Inc.* v. *County of Contra Costa, supra,* 145 Cal.App.3d 108, 117.) " 'Personal property' includes all property except real estate." (Rev. & Tax. Code, § 106.)

Civil Code section 660, which defines "fixtures," provides in pertinent part: "A thing is deemed to be affixed to land when it is . . . permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts or screws . . . ." Civil Code section 1013 provides that "[w]hen a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed . . . belongs to the owner of the land . . . ."

In determining whether an article is a fixture, there are three tests: " '(1) the manner of its annexation; (2) its adaptability to the use and purpose for which the realty is used; and (3) the intention of the party making the annexation.' " (*Simms* v. *County of Los Angeles* (1950) 35 Cal.2d 303, 309 [217 P.2d 936], *cert. den.*, 340 U.S. 891 [95 L.Ed. 646, 71 S.Ct. 207], rehg. den., 340 U.S. 916 [95 L.Ed. 662, 71 S.Ct. 291]; *Security Data, Inc.* v. *County of Contra Costa, supra,* 145 Cal.App.3d at p. 117; *Specialty Restaurants Corp.* v. *County of Los Angeles, supra,* 67 Cal.App.3d at p. 933; *Tele-Vue Systems, Inc.* v. *County of Contra Costa, supra,* 25 Cal.App.3d at p. 343; 3 Witkin, Summary of Cal. Law (8th ed. 1973) Personal Property, § 56, p. 1663.)

For purposes of taxation, whether the parties intended to make the article a permanent part of the realty is the crucial factor and that intention is manifested by the *physical facts or reasonably manifested outward appearances.* (*Security Data, Inc.* v. *County of Contra Costa, supra,* 145 Cal.App.3d at p. 117; *Seatrain Terminals of California, Inc.* v. *County of Alameda, supra,* 83 Cal.App.3d at p. 74; *Specialty Restaurants Corp.* v. *County of Los Angeles, supra,* 67 Cal.App.3d at p. 933.)

Here, the trial court specifically found that "[t]he foundational wiring and related equipment were affixed to the subscribers' premises by means of clamps, screws, bolts and other means of attachment," that the wiring "is permanently affixed to the structure to which it has been attached," that "Morse has never removed any portion of the system which is permanently installed in the subscribers' premises (the foundational wiring and equipment not including major components) and upon termination of the service agreement, that portion of the system which is not removed may be utilized by the subscriber for any purpose whatsoever, including the connection to another alarm system."

The three-part test is thus satisfied. The facts show the minor component parts of the systems were physically *permanently* annexed to the subscribers' real property and were necessary or convenient to the use of the premises as residences or commercial establishments. The minor component parts which remained in place were physically adapted for use by the sub-

scribers with another alarm company's system. ■■ The manner of annexation and the use to which the real property is put are relevant in determining the crucial element of intention to make the article a permanent part of the realty. (3 Witkin Summary of Cal. Law, *supra,* Personal Property, § 56, p. 1663.)

■■ Additionally, although the First Contract provided that Morse had the right to remove all or part of the installed system upon default or termination of the agreement by the subscriber, Morse never removed the minor component parts under either contract because, not only would it disfigure the subscribers' real property, but the wires and other small parts were not reusable and not worth the cost of the labor to retrieve them. Great expense or difficulty in removal are indicative of intended permanence. (*Seatrain Terminals of California, Inc.* v. *County of Alameda, supra,* 83 Cal.App.3d at p. 78; *Speciality Restaurants Corp.* v. *County of Los Angeles, supra,* 67 Cal.App.3d at p. 934.)

Therefore, the trial court's determination that the minor component parts of the Morse burglar alarm systems lost their character as personal property and became permanent fixtures on the subscribers' real property is supported by substantial evidence. (*Seatrain Terminals of California, Inc.* v. *County of Alameda, supra,* 83 Cal.App.3d at pp. 79-80.)

The real question, however, is whether the minor component parts of the burglar alarm systems are taxable to Morse even though they are fixtures permanently attached to the subscribers' premises. The trial court answered the question in the affirmative, reasoning: "[T]he system must be considered in its *entirety,* both portions of the system—the permanently installed foundational wiring and the major component parts . . . . *Since Morse retained title to a segment of the operating system under either agreement, the entire system was taxable to it.*" (Italics added.) We agree.

Revenue and Taxation Code, section 405, subdivision (a), provides: "Annually, the assessor shall assess all taxable property in his county . . . to the persons *owning,* claiming, possessing or controlling it on the lien date." (Italics added.) Therefore, if the minor component parts of the Morse burglar alarm systems are not severable from the major component parts of the systems, which Morse admits it owns, the entire systems are properly assessable to Morse.

The only analogous California case which deals with the question of severability is *Tele-Vue Systems, Inc.* v. *County of Contra Costa, supra,* 25 Cal.App.3d 340. *Tele-Vue* was the owner and operator of a cable television system. It provided master television antennas at high, relatively unobstruct-

ed points and transmitted signals through a system of cables carried on utility company poles to the homes of its subscribers. At the terminal points a cable was suspended from a utility pole's crossarm to the subscribers' home, much like a telephone connection. The cable then entered the home, and was, along with related wiring and equipment, fastened by means of clamps, screws and bolts. The system terminated within the home in one or more wall outlets. The portion of the system which was extended from the utility pole and into the home was known as a "housedrop." Tele-Vue charged the subscribers $25 for installing a housedrop and charged $10 for each additional outlet. It then charged the subscribers a monthly service fee at the rate of $5 for one, and $1 for each additional, outlet.

The County of Contra Costa assessed and taxed the housedrops to Tele-Vue on the basis of the cost to them of *both* the exterior and interior portions of the housedrops. Tele-Vue paid the taxes and then commenced an action for refund of the taxes levied and collected on the interior portions of the housedrops. The Court of Appeal determined the interior housedrops were fixtures which became part of the Tele-Vue subscribers' real property. (*Id.,* at p. 343.) Therefore, the Court held the interior portions of the housedrops were *severable* from the exterior portions of the housedrops and were improperly assessed to Tele-Vue as their personalty. (*Id.,* at p. 345.)

Morse contends *Tele-Vue* is controlling and that the trial court erred in holding its burglar alarm systems are not severable and must be taxed as entire units. We disagree. *Tele-Vue* is not controlling as it is distinguishable from the instant case.

In *Tele-Vue,* the evidence established that Tele-Vue "neither owned, nor claimed, nor possessed, nor controlled" the interior housedrops which the Court determined were fixtures on the Tele-Vue subscribers' premises. (*Id.,* at p. 344; see Rev. & Tax. Code, § 405, subd. (a).) Tele-Vue never made a claim of ownership to, or control over, the interior housedrops. In fact, a Tele-Vue subscriber could himself, without charge, add new outlets to the system, although in that case Tele-Vue did not guarantee good reception. The Tele-Vue subscriber could discontinue service at will and, if he did so, the system was simply disconnected at the utility pole and nothing was removed from the subscriber's premises. Some subscribers even "hooked . . . up" the housedrops to their own rooftop antennas. In short, a Tele-Vue subscriber could do anything he wished with the interior housedrop. Tele-Vue "had no agreement whatever with the subscriber 'over what could be done with the equipment.' " (*Id.,* at p. 342.)

In contrast, in the instant case, Morse's First Contract provided that *all* portions of the system, with the exception of the telephone company leased

lines, were to remain the sole property of Morse and that upon termination of the service agreement Morse had the right to remove *all* parts of the installed system. Therefore, although Morse never in fact removed the minor component parts of the installed system from the subscribers' property, by the specific terms of its First Contract Morse had the right to do so.

Morse, however, revised the terms of its subscriber agreements in its Second Contract to provide that ownership of the minor component parts vested in the subscriber upon installation and that Morse had no right to remove those parts. The revision by Morse of its Second Contract in order to place ownership of the minor component parts of the burglar alarm systems in its subscribers did not, however, transfer the tax burden to the subscribers. Unlike the facts in the *Tele-Vue* case, both of the Morse contracts had provisions which were intended to prevent the subscribers from tampering with or altering the burglar alarm systems and both contracts provided that in the event of loss or damage to *any* part of the system (either the major or minor component parts), the subscriber would indemnify and pay Morse for the cost of repair or replacement of the equipment. Thus, under the specific terms of both contracts, Morse had *control* over the entire burglar alarm systems installed on its subscribers' premises.

Therefore, as County correctly urges, the instant case is not governed by *Tele-Vue* because the *Tele-Vue* facts are readily distinguishable. Here, contrary to the facts in *Tele-Vue,* the evidence shows that Morse either *owned* or, in the alternative, *controlled* the minor components of the burglar alarm systems installed on its subscribers' property.

That being so, the severability concept of *Tele-Vue* is inapplicable to the instant case. Since the major and minor component parts of the Morse burglar alarm systems were not severable for purposes of ad valorem property taxation, we hold the value of the *entire* burglar alarm systems were taxable to Morse as real property under Revenue and Taxation Code section 405, subdivision (a), because, as Morse concedes, it was the owner of the major component parts of the burglar alarm systems.[6]

2. *The assessment against Morse for the entire value of the burglar alarm systems is not arbitrary or discriminatory.*

■ Morse contends that the assessment against it for the entire value of the burglar alarm systems is arbitrary and discriminatory because fire alarm

---

[6]Improvements to real property, which are owned by somebody other than the owner of the land, may be taxed to the owner of the improvements, rather than to the owner of the land. (Rev. & Tax. Code, § 2188.2; *T. M. Cobb Co., supra,* 16 Cal.3d at pp. 624-626; Ehrman & Flavin, Taxing California Property (2d ed. 1979) § 8.9, pp. 253-254.)

systems installed by Morse, which are virtually identical to the Morse burglar alarm system installations, are not assessed to Morse. Rather, the fire alarm systems are assessed as a part of the Morse subscribers' realty. Morse's contention lacks merit.

At trial, County presented evidence that the reason for the disparate treatment of fire and burglar alarm systems for purposes of ad valorem property taxation is that the fire alarm systems protect the real property itself, while the burglar alarm systems protect primarily the contents contained within the premises. The trial court determined that these reasons justified the disparate treatment. The trial court also found that the "fact that each alarm system is treated differently for property tax purposes is not sufficient cause to invalidate the assessment of the burglar alarm systems to Morse." We agree with the trial court's findings. The assessment against Morse for the entire value of the burglar alarm systems was not arbitrary or discriminatory.

3. *The trial court did not err in finding that there was no double taxation of the Morse burglar alarm systems.*

Revenue and Taxation Code section 102 prohibits double taxation. Morse contends that taxation to it of the minor component parts of the burglar alarm systems, which are fixtures on its subscribers' real property, constitutes double taxation, because the value of those parts is included in the value of the subscribers' realty. Morse misstates the pertinent facts. County presented evidence, through the testimony of its principal appraiser for the Los Angeles County Assessor's office, that it is the practice of the assessor's office not to include the value of burglar alarm systems in their appraisal of real property. The appraiser also testified that the Assessor's Handbook, which is used by Los Angeles County assessors, provides that burglar alarm systems are to be treated as fixtures but are to be assessed *only* to the lessors of the systems. Therefore, the evidence supports the finding of the trial court that there was no double taxation of the Morse burglar alarm systems.

### DISPOSITION

The judgment is affirmed.

Klein, P. J., and Danielson, J., concurred.